# Samuel Graft, Plff. in Err., *v.* Baltimore & Ohio Railroad Company.

The wreck master of a railroad, while proceeding on a wreck train to the scene of an accident, received injuries as a result of disobedience of orders by the conductor and engineer of the train, over whom he had no authority. Afterward, upon receiving money on account of the injuries, from a beneficial society whose payments were guaranteed by the railroad company, he executed a release of damages, under seal, to the railroad company. He then brought suit against the railroad company for damages. *Held*, that he could not recover.

(Argued February 2, 1887.   Decided February 14, 1887.)

January Term, 1887, No. 214, E. D., before MERCUR, Ch. J., GORDON, PAXSON, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Fayette County to review a judgment on a verdict for the defendant in an action of trespass on the case for negligence.   Affirmed.

At the trial before INGHRAM, P. J., the following facts appeared:

In 1882 Samuel Graft, the plaintiff in error, was employed as wreck master on the Pittsburg division of the Baltimore & Ohio Railroad. When not thus engaged he fired in the company's yard at Connellsville. He had worked on this road for twenty-four years. This division of the road extends from Cumberland, Md., through Connellsville, Pa., to Pittsburg. At Connellsville, the company had its shops and a large part of the business of this division was done there.

The trainmen and other employees at Connellsville got their

Cited in Eckman v. Chicago, B. & Q. R. Co. 169 Ill. 312, 38 L. R. A. 754, 48 N. E. 496.

NOTE.—For liability for injury by the act of a fellow servant, see note to Keys v. Pennsylvania Co. 1 Sad. Rep. 316.

Similar determinations are found holding that the acceptance of benefits from a relief association, maintained by defendant, is a good consideration for a release of damages executed. Johnson v. Philadelphia & R. R. Co. 163 Pa. 127, 29 Atl. 854; Ringle v. Pennsylvania R. Co. 164 Pa. 529, 44 Am. St. Rep. 628, 30 Atl. 492; Eckman v. Chicago, B. & Q. R. Co. 169 Ill. 312, 38 L. R. A. 754, 48 N. E. 496.

orders from what was known as the "D" office, which was located about the middle of the company's yard at that place. The yard extends from Mountz creek on the north to Gibson's· Station on the south, a distance of about 1¼ miles. This division of the road was divided into two districts—one, known as the eastern, extending from Cumberland to the "D" office in Connellsville; the other, the western, from the "D" office to Pittsburg. The trains for both districts were made up in the· yard, near the "D" office. In the eastern district, J. R. Irwin was the supervisor of trains, and had charge of the movement of all trains and the direction of all men. His office was on the line of the road at Meyersdale, Pa., about 50 miles east of Connellsville. Samuel McIlroy was the train despatcher in this· district, with his office at Meyersdale, and in Mr. Irwin's absence or at night, would direct the running of trains in Irwin's· name. James Emery was supervisor of engines. J. T. Johnson was the supervisor of trains in the western district, and Andrew Butler was the supervisor of engines, known also as traveling engineer. The jurisdiction of each of these officers was confined to his district, and they had no authority beyond it.

About 9 o'clock on the night of November 8, 1882, a car loaded with sand in an east bound freight train broke in the middle, ¾ of a mile west of Indian Creek Station, which is about 6 miles east of Connellsville. The night was very dark. The train had two engines,—one in front, the other behind. Peter Ryan was the conductor; John Morley and James Coughanour, the engineers; and George Walton, John Burke,. and John T. Bishop were the flagmen or brakemen. Conductor Ryan at once notified supervisor Irwin of the accident, by telegraph from the Indian Creek Station. Mr. McIlroy, train despatcher and acting supervisor, ordered Ryan to return to Connellsville with the rear portion of the disabled train. With Coughanour as engineer and a fireman and brakeman, he started for Connellsville with sixteen cars. He was on the rear car going west and had a light in his hands which he used as a marker. His train had the right of all trains on the road.

After the returning train had got to the first watch box west of Indian creek, which is about ¾ of a mile from the place of the accident, flagman Bishop was picked up and got on the engine. He had a red and white light, but what became of him does not appear. Another flagman was also shortly thereafter

picked up.  Engineer Coughanour then ran his train into the yard at Connellsville.  Part of it,—two cars,—however, had become detached and was left standing on the track about ½ mile west of Indian creek.  Conductor Ryan and flagman Burke were on these two cars when they became detached.  Ryan left Burke with the two cars and followed after Coughanour's train, which lost four more cars about ¾ of a mile east of Gibson.  He testified that it was Coughanour's duty to see that he did not leave him.  And Coughanour testified that he saw someone on the rear car, and that flagman Bishop may have signaled him to stop when the four cars were detached.

When conductor Ryan notified supervisor Irwin's office of the disabled condition of his train, in addition to the order given Ryan, Mr. McIlroy issued an order by telegraph to the yard master at Connellsville to get the wreck train ready.  He also ordered the wreck train to run to Indian creek wild, but to remain at Connellsville until that part of the disabled train ordered back had arrived.  This order was issued to conductor Fuller and engineer Syphers of the wreck train, and its receipt acknowledged by being repeated by them to Mr. McIlroy.  John R. Porter was the yard master; but at night the assistant yard master, J. L. Snyder, was in charge, and it was his duty to get the wreck train out.  He did so.  The wreck train was made up in the following order; derrick or crane car ahead, tool car next, and the wheel or truck car next, with the engine in the rear.

Mr. Graft, who was the wreck master, was called at 10 o'clock in the evening, and when he got to the "D" office found his train made up.  He testified: "It was the duty of the conductor to take us to the wreck, and mine to clear up the wreck."  He made objection to hauling the train in the way it was made up, to Mr. Johnson and Mr. Butler, neither of whom had any control over it.  He, his crew of three other men, and Mr. Butler, traveling engineer on the western district, got aboard the wreck train and it was run up to Gibson and there run on the Fayette county branch, which leaves the main track at that point.  This was in direct violation of supervisor Irwin's order to remain at Connellsville till engineer Coughanour's part of the disabled train returned there.  Here the wreck train waited for Coughanour's train to pass west.  Mr. Graft testified:

Q. Now when that train (disabled) was coming back, what

was the duty of the conductor and engineer on your wreck train as to knowing whether the train had gone down or not, before you pulled out?

A. Well, they had a right to see if that train had gone down, and if there was lights on the hind end of the train.

Q. They are called markers, are they not?

A. Yes, sir.

Q. Before you started out was it their duty to know whether the whole of that train had passed?

A. Yes, sir; that is what they ought to do.

Q. How would they ascertain that fact, Mr. Graft.

A. Well, they would have to watch the train and see if they seen the markers on it.

Q. Well, what are the markers? The jury will not understand that.

A. Well, sometimes they are white lights, lanterns, and sometimes red lights, lanterns.

Q. Well, the rules of the company required them to be satisfied that that train had passed, and you would know it in that way?

A. Yes, sir.

Q. By noticing the lights or markers on the hind end of the car?

A. Yes, sir.

Q. If they didn't see those markers there, what was their duty then?

A. Well, their duty was to lay there until they knowed the train was all there. They had no right to go out until they knowed the train had passed, the whole train. (This was corroborated by the witnesses on both sides.)

Instead of remaining at Gibson until they had seen the disabled train pass down with markers on its rear end, conductor Fuller and engineer Syphers, in violation of the company's rules, pulled out as soon as they saw a part of the train pass without markers. The wreck train had proceeded eastward up the main track about ¾ of a mile, when it collided with the four cars detached from the disabled train and left standing on the track. Mr. Graft was thrown from his seat in the tool car and injured. He walked to an engine on which he and others were taken to Connellsville.

In January, 1883, he was again employed by the company as wreck master and yard fireman, at the same wages paid him prior to his injury on the 8th of November, 1882, and continued in the company's service until within about one month before bringing this suit.

There was no allegation of incompetency on the part of Fuller or Syphers.

In September, 1882, Mr. Graft made application for membership in the "Baltimore & Ohio Employees' Relief Association," and was admitted to membership on the 21st day of October, 1882. The object of this association is "to extend relief in case of sickness, injury, old age, and death to the employees of the Baltimore & Ohio Railroad Company and their families, to receive deposits on interest from said employees and their wives, and to loan them money at lawful rates of interest, in order to provide them with or to improve homesteads, and generally to promote their welfare."

The railroad company guarantees all benefits offered by the association and the performance of all its contracts and obligations. It contributed $100,000 to the fund of the association, and was authorized to give from time to time such aid by money or otherwise on such terms as the president and directors might prescribe. Membership in this association was voluntary on part of the railroad employees. Mr. Graft, through his counsel, admitted that prior to his becoming a member of the association he was acquainted with its constitution, by-laws and rules. By § 3 of art. 3 of the constitution it is provided that no benefits shall be paid to any member until he file a release, releasing the railroad company from all damages because of the accident. By a release under seal, dated January 10, 1883, in consideration of the benefits received, Mr. Graft released the railroad company from all damages to which he was entitled by reason of the injuries received while in the company's service on the wreck train. This suit was begun August 21, 1883.

When the plaintiff below closed his testimony, the defendant moved the court for a compulsory nonsuit, on the ground of failure to show any negligence on its part; and that if negligence had been shown, it was that of a coemployee or fellow servant, for which the defendant company was not liable. The motion was overruled, but the defendant having put in its evidence, the court instructed the jury that under all the evidence the plaintiff

was not entitled to recover. This instruction was assigned as error.

*Edward Campbell,* for plaintiff in error.—The employer is bound to furnish and maintain suitable instrumentalities for the work or duty which he requires of his employees, and failing in this, he is liable for any damages flowing from such neglect of duty. The officer to whose care is committed the particular department of its business is the one who is expected to use ordinary care in the conduct thereof, and whose negligence therein is the negligence of the company. Caldwell v. Brown, 53 Pa. 453; Frazier v. Pennsylvania R. Co. 38 Pa. 104, 80 Am. Dec. 467; Patterson v. Pittsburg & C. R. Co. 76 Pa. 389-393, 18 Am. Rep. 412.

The negligence of superintending officers is the negligence of the company. Wharton, Neg. §§ 222, 229, note 3; Beach, Contrib. Neg. § 114, p. 335.

Workmen are not fellow servants, unless there is unity of two elements, namely, of control and of common pursuit. Wood, Railway Law, p. 1496.

While a railroad company is not liable to a servant for injuries caused by the neglect of any of his coservants, employed in the same general business of operating the road, although he be a superior, yet they may be liable to employees for injury happening to them through the negligence of the company, which negligence may consist in the employment of incompetent persons, in the management of the road and trains, or of unsafe machinery in the running of them. Wood, Mast. & S. p. 849, note 5; O'Donnell v. Allegheny Valley R. Co. 59 Pa. 239-248, 98 Am. Dec. 336; Weger v. Pennsylvania R. Co. 55 Pa. 465.

If the person in question is employed to do any of the duties of the master, he cannot be regarded as a fellow servant or colaborer with the operatives. Beach, Contrib. Neg. § 112, p. 333.

A railroad company is liable to a locomotive engineer, injured by the negligence of a conductor in the conduct of a train. Chicago, M. & St. P. R. Co. v. Ross, 112 U. S. 377, 28 L. ed. 787, 5 Sup. Ct. Rep. 184; Darrigan v. New York & N. E. R. Co. 52 Conn. 285, 52 Am. Rep. 590; Cray v. Philadelphia & R. R. Co. 23 Blatchf. 263, 24 Fed. 168.

If the defendant knew or ought to have known of Bishop's incompetency as a flagman, it was negligence to employ him. Wharton, Neg. §§ 224 (note 1), 229, 241; Weger v. Pennsylvania R. Co. 55 Pa. 460, 465; Wood, Mast. & S. § 430, p. 825; Huntingdon & B. T. Mountain R. & Coal Co. v. Decker, 82 Pa. 124, 84 Pa. 419.

This was a question for the jury, and not the court. Wharton, Neg. § 237.

When a servant is generally known to be incompetent the master is chargeable with negligence for not knowing his reputation. 3 Wood, Railway Law, § 394, p. 1507; Pennsylvania R. Co. v. Books, 57 Pa. 339, 343, 98 Am. Dec. 229.

If the plaintiff below and in error did not perform the service voluntarily, but was directed to do the act, and the doing of it did not necessarily or inevitably expose him to danger, he cannot be said to have had the particular risk in contemplation, and consequently did not assume it. Patterson v. Pittsburg & C. R. Co. 76 Pa. 389, 18 Am. Rep. 412.

Where the exigencies of the service are great, and the servant has entered upon the performance of a duty that he suddenly ascertains is attended with great hazard, but a neglect to discharge which would also be dangerous, but not nearly so dangerous as for him to proceed with the duty, yet, if he does proceed, the knowledge of the risk coming to him thus suddenly, he cannot be expected to balance the risks with exact precision, and to decide with absolute certainty whether it is more hazardous to go on or to recede; and in such a case, a recovery may be had, even though the jury find that he might have receded after the knowledge of the risk came to him, without injury to himself. Greenleaf v. Illinois C. R. Co. 29 Iowa, 14, 4 Am. Rep. 181.

In all cases, the question is whether, in view of the circumstances, a reasonably prudent man would have regarded the particular act as extra hazardous. The fact that he knew or ought to have known that there was some danger does not excuse the master, if the danger was greater than the servant, in the exercise of due care, had reason to anticipate; and the amount of the danger and the circumstances that led the servant to incur it, are properly questions for the jury. Clayards v. Dethick, 12 Q. B. 439; Wood, Mast. & S. § 387, p. 760.

The release set up by the defendant cannot operate to acquit the company of liability for negligence, because the words and

effect of a release cannot be held to extend beyond the consideration. Rapp v. Rapp, 6 Pa. 45; Burke v. Noble, 48 Pa. 168; McLarren v. Robertson, 20 Pa. 129.

No agreements, stipulations, or contracts made before the occurrence of the negligence charged can relieve from liability arising out of the defendant's own negligence. Alabama G. S. R. Co. v. Little, 71 Ala. 611; Wood, Am. Railway Law, p. 1577, 1578, § 425; Pennsylvania R. Co. v. Henderson, 51 Pa. 326, 329, 330; Pennsylvania R. Co. v. Butler, 57 Pa. 337; Beach, Contrib. Neg. p. 179, § 59; Laing v. Colder, 8 Pa. 479, 49 Am. Dec. 533; Empire Transp. Co. v. Wamsutta Oil Ref. & Min. Co. 63 Pa. 14, 3 Am. Rep. 515; Buffalo, P. & W. R. Co. v. O'Hara, 3 Pennyp. 190; Grogan v. Adams Exp. Co. 34 Pittsb. L. J. 170.

If an agreement or contract made by Mr. Graft directly with the Baltimore & Ohio Railroad Company could not, in advance, relieve the company from liability for its own negligence, much less could such an agreement or contract made by Mr. Graft with some other person or corporation relieve the company from such liability.

The release in this case is not under seal. Taylor v. Glaser, 2 Serg. & R. 502; M'Dill v. M'Dill, 1 Dall. 63, 1 L. ed. 38; Duncan v. Duncan, 1 Watts, 322; Bowman v. Robb, 6 Pa. 302; Long v. Ramsay, 1 Serg. & R. 72; Miller v. Binder, 28 Pa. 489.

It does not appear whether the release under consideration in Rapp v. Rapp, 6 Pa. 45, was under seal or not.

In McLarren v. Robertson, 20 Pa. 129, and Burke v. Noble, 48 Pa. 168, the releases under consideration were not under seal; but in the case of Pierce v. Sweet, 33 Pa. 151, the very same doctrine is applied to a release under seal.

So in the case of Mortland v. Himes, 8 Pa. 265.

In 1 Troubat & Haly, Pr. p. 109, ed. 1867, it is said that in Pennsylvania the law relating to this subject (want of consideration) has long been settled according to the principles of equity, in order to avoid the manifest injustice which would have otherwise. ensued.

In Swift v. Hawkins, 1 Dall. 17, 1 L. ed. 18, the court said that the want of consideration to a bond could be shown under the plea of payment, although in an English court of law such a defense would not be permitted; and the same principle has been asserted in succeeding cases. Baring v. Shippen, 2 Binn.

166; Stubbs v. King, 14 Serg. & R. 206; Frederick v. Campbell, 14 Serg. & R. 293; Heck v. Shener, 4 Serg. & R. 256, 8 Am. Dec. 700; Solomon v. Kimmel, 5 Binn. 233, 234; Roop v. Brubacker, 1 Rawle, 304, 308; Bauer v. Roth, 4 Rawle, 83–95; Sommer v. Sommer, 1 Watts, 303, 304; McCulloch v. McKee, 16 Pa. 289, 292; Dampf's Appeal, 97 Pa. 371.

The objection to the competency of a grantor to invalidate his deed is founded on interest. Kronk v. Kronk, 4 Watts & S. 127.

This release to the relief association cannot benefit the Baltimore & Ohio Railroad Company, being a distinct corporation.

In Comyn's Digest, title, *Release,* B. 2, p. 186, it is said: "But a release by him who has a right to the inheritance or freehold, to him who has not a freehold in deed or in law, nor an estate in reversion or remainder, and if there be no privity between them, is void; as if a disseisee release his right to a lessee for years of the disseisor." See also Co. Litt. 266, *a.*

So, if a tenant for life, reversion, or remainder to B be disseised, a release by anyone of his right to B is void; for he had only a right to the reversion or remainder. Litt. § 451.

So, a release to a disseisee by him who has a rent charge out of the land is void (Co. Litt. 268, *a*); or, by a donor of his reversion or right therein to the donee, being disseised (Co. Litt. 268, *b*).

Yet, tenant in dower may release her dower to a guardian in chivalry, although he has only a chattel; for it is recoverable against him. Co. Litt. 266, *a.*

So, a release to him who has no estate or right is void, though there be a privity between them; as, if tenant in fee makes a feoffment, and afterwards the lord releases to the feoffor, his seigniory is not extinct. Litt. § 457.

*Boyle & Mestrezat,* for defendant in error.—It has been held that all the employees of a railway corporation, in every possible combination or association, are fellow servants in a common employment; and this, notwithstanding that the negligent servant is of a grade superior to the servant injured, or that the two are employed in entirely distinct and separate departments of the common service. Beach, Contrib. Neg. § 116.

In the present state of the law the essence of common employment is a common employer and payment from a common fund.

The weight of authority is to the effect that all who work for a common master, or who are subject to a common control, or derive their compensation from a common source, and are engaged in the same general employment, working to accomplish the same general end, although it may be in different departments or grades of it, are coemployees who are held in law to assume the risk of one another's negligence.  Beach, Contrib. Neg. § 109; Lehigh Valley Coal Co. v. Jones, 86 Pa. 433; Keystone Bridge Co. v. Newberry, 96 Pa. 246; National Tube Works Co. v. Bedell, 96 Pa. 179; Weger v. Pennsylvania R. Co. 55 Pa. 460; Ryan v. Cumberland Valley R. Co. 23 Pa. 384; Frazier v. Pennsylvania R. Co. 38 Pa. 104, 80 Am. Dec. 467.

Similar to the case at bar is Abend v. Terre Haute & I. R. Co. 53 Am. Rep. 616.

In order to affect an employer with a servant's unfitness, it must be shown that the employer knew of it.  Huntingdon & B. T. Mountain R. & Coal Co. v. Decker, 82 Pa. 124; Keystone Bridge Co. v. Newberry, 96 Pa. 252.

"There can be no recovery against the employer for injuries arising from patent risks which the employee has knowingly and voluntarily assumed.  The testimony conclusively shows that plaintiff was fully cognizant of the danger to which he was exposed, from negligently dropping in cars on the tracks where he was from time to time at work, and the precautions that were taken to avert such danger.  He was as fully aware of all this as the company itself, and knew that his safety depended on the care that was exercised by his fellow employees."  Campbell v. Pennsylvania R. Co. 1 Sad. Rep. 299.

The release offered in evidence by the defendant was a good defense to the action.  Pennsylvania R. Co. v. Shay, 82 Pa. 198.

A release of all claim for damages growing out of personal injury caused by negligence on the part of defendant, if fairly obtained by the agents of defendant, a railway company, and understandingly executed by the plaintiff, is an effectual bar to an action to recover for such injury.  Chicago, R. I. & P. R. Co. v. Lewis, 109 Ill. 120.

The words of a release must be taken most strongly against the releasor.  Matlack's Appeal, 7 Watts & S. 81.

The release being under seal imports consideration which the

plaintiff in error is not permitted to deny. Metcalf, Contr, 233; Candor's Appeal, 27 Pa. 120; Gompers v. Rochester, 56 Pa. 194; Schmertz v. Shreeve, 62 Pa. 460, 1 Am. Rep. 439; Mack's Appeal, 68 Pa. 231.

PER CURIAM:

We see no error in the learned judge giving binding instructions to the jury to find for the defendant.

Judgment affirmed.