## CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. JOSEPH BELL.

FILED FEBRUARY 19, 1895. No. 5449.

1. **Corporations:** RAILROAD COMPANIES: PARTICIPATION IN RELIEF DEPARTMENT: ULTRA VIRES: PRESUMPTION. The scheme of the Burlington Relief Department, organized and conducted by the Chicago, Burlington & Quincy Railroad Company and its employes, examined and set out in the opinion, and *held,* (1) as said railroad company is a corporation and no part of its charter is set out in the pleadings or evidence in the record, the court is unable to determine whether the act of the railroad company in participating in the organization and conduct of the Relief Department is within or without the express or implied powers conferred by its charter; (2) in the absence of all evidence on the subject, the court cannot presume such act of the railroad company is *ultra vires.*

2. **Contracts with Relief Department of Railroad Company:** CONSIDERATION: CONSTRUCTION: PUBLIC POLICY: ESTOPPEL. The contract signed by an employe of said railroad company on becoming a member of said Relief Department, to the effect that if he should be injured and receive moneys from the relief fund of said Relief Department on account thereof, that the acceptance of such relief fund should operate as a release of such employe's claim against said railroad company for damages because of such injury, construed, and *held,* (1) that such contract of an employe did not lack consideration to support it; (2) that the promise made by the employe to the relief department for the benefit of the railroad company was available to the latter as a cause of action or defense; (3) that such contract was not contrary to public policy; (4) that the effect of such con-

tract was not to enable the railroad company to exonerate itself by contract from liability for the negligence of itself or servants; (5) that the employe did not waive his right of action against the railroad company, in case he should be injured by its negligence, by the execution of the contract; (6) that it is not the execution of the contract that estops the injured employe, but his acceptance of moneys from the Relief Department on account of his injury after his cause of action against the railroad on account thereof arises.

3. **Release and Discharge**: ACCEPTANCE OF MONEY FROM RELIEF DEPARTMENT: RIGHT OF EMPLOYE TO RECOVER FOR NEGLIGENCE OF RAILROAD COMPANY. An employe of said railroad company and a member of said Relief Department was injured through the negligence of the railroad company. After his injury there was paid to him from the funds of the Relief Department $60 on account of such injury. The employe accepted this money and then sued the railroad company for damages for negligently injuring him. There was no showing that such employe was induced to become a member of said Relief Department, or execute said contract of release, or accept the money paid to him by said Relief Department, through fraud or mistake. *Held*, That the employe could not recover.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*T. M. Marquett* and *J. W. Deweese*, for plaintiff in error, cited: *Graft v. Baltimore & O. R. Co.*, 8 Atl. Rep. [Pa.], 206; *Spitze v. Baltimore & O. R. Co.*, 23 Atl. Rep. [Md.], 308; *Owens v. Baltimore & O. R. Co.*, 35 Fed. Rep., 718; *State v. Baltimore & O. R. Co.*, 36 Fed. Rep., 655; *Fuller v. Baltimore & Ohio Employes' Relief Association*, 67 Md., 433; *Kinney v. Baltimore & Ohio Employes' Relief Association*, 53 Am. & Eng. R. Cas. [W. Va.], 34; *Johnson v. Philadelphia & R. R. Co.*, 29 Atl. Rep. [Pa.], 854; *Ringle v. Pennsylvania R. Co.*, 30 Atl. Rep. [Pa.], 492.

*Sawyer & Snell, contra*, cited: *Miller v. Chicago, B. & Q. R. Co.*, 65 Fed. Rep., 305.

*Capps & Stevens*, also for defendant in error, cited: *Atchi-*

son, *T. & S. F. R. Co. v. Lawler*, 40 Neb., 356; *Reynolds v. Nichols*, 12 Ia., 398; *Ray v. Mackin*, 100 Ill., 246; *Lake Shore & M. S. R. Co. v. Spangler*, 44 O. St., 471; *Western & A. R. Co. v. Bishop*, 50 Ga., 465; *Cook v. Western & A. R. Co.*, 72 Ga., 48; *Pickering v. Ilfracombe R. Co.*, L. R., 3 C. P. [Eng.], 250; *United States v. Bradley*, 10 Pet. [U. S.], 343; *Hynds v. Hays*, 25 Ind., 31; *State v. Findley*, 10 O., 51; *Roesner v. Hermann*, 10 Biss. [U. S.], 486; *Kansas P. R. Co. v. Peavey*, 29 Kan., 169; *O'Neil v. Lake Superior Iron Co.*, 63 Mich., 690; *Russell v. Richmond & D. R. Co.*, 47 Fed. Rep., 204; *Omaha Street R. Co. v. Loehneisen*, 40 Neb., 37.

RAGAN, C.

Joseph Bell sued the Chicago, Burlington & Quincy Railroad Company (hereinafter called the "Railroad Company") in the district court of Lancaster county for damages. As a cause of action he alleged that on the 13th of December, 1890, he was a switchman in the employ of the Railroad Company at New Castle, in the state of Wyoming; that as such switchman it was his duty to couple freight and passenger cars with the locomotive engines of the Railroad Company, and in order to do so to step inside the rails and between the engine and the car to which it was to be coupled; that it had been the custom and it was the duty of the Railroad Company to furnish for switching purposes a switching engine so constructed as to enable a switchman to safely pass between such engine and the car to which it was to be attached; that on the date aforesaid the switch engine of the Railroad Company at New Castle was disabled; that there was in the yard at New Castle at that time belonging to the Railroad Company an ordinary road engine used between the towns of New Castle and Cambria for the purpose of hauling heavy freight trains over the grades between said towns; that said road engine had attached to the rear end of its tender two large sand boxes

which extended out to the rear of the tender a distance of some twelve or eighteen inches; that by reason of said sand boxes being attached thereto said road engine was wholly unsafe for switching purposes and especially for switching of passenger coaches, all of which was unknown to Bell; that on said date the yard-master of the Railroad Company, whose orders Bell was obliged to obey, directed him, Bell, to couple a passenger coach on said road engine; that to obey said order it was necessary for Bell to go inside the rails between said coach and said road engine; that Bell, without any negligence on his part, went between said coach and road engine for the purpose of coupling the two together, and while in the act of making such coupling the coach and road engine were pushed together and he was crushed between the coach and one of the sand boxes attached to said engine, and injured.

Among other defenses the Railroad Company pleaded: "Further answering the said petition, the defendant says that prior to the time of this accident, the defendant and its employes organized an association for the relief of employes of said company injured while in the service of the said defendant, known as the Burlington Voluntary Relief Department; that said association thus formed was a department for the protection and relief of employes injured in the service of the said company, providing for the payment of certain sums of money for injuries received in the service of said company, and for maintenance and support under certain specifications and terms and conditions, as provided for in the organization and rules of the said Burlington Voluntary Relief Department; that at and prior to the time of said injury the plaintiff was a member of said association, and when injured, and subsequent thereto on account of being such member, the said plaintiff received and accepted the benefits due to him by reason of his membership in said Relief Department, and the defendant company paid to the plaintiff the amount of the

benefits due to him by reason of his membership in said Relief Department on account of said injury, and the plaintiff received and receipted for the said amounts of money thus paid to the plaintiff as benefits accruing to him by reason of said injury on account of his membership in said association, and in consideration therefor duly released the defendant from any and all liability on account of the said accident, other than the benefits accruing to him by reason of his membership in said Burlington Voluntary Relief Department. The defendant furthermore alleges. that it is discharged and released from any and all liability that might exist in favor of the plaintiff on account of the said injury, and the plaintiff is barred and estopped from claiming any damages from this defendant by reason of his membership in the said Relief Department and the acceptance by him of the benefits thereof paid as hereinbefore stated."

Bell replied to this defense as follows: "And plaintiff further replying admits that prior to the time of the accident complained of there had been created an organization known as the Burlington Voluntary Relief Department, and that he had become a member of said organization by paying the usual initiation fee, and ever thereafter maintained his membership therein by paying all regular dues and charges imposed upon him by said association, and that by reason of his membership and continued good standing in said association he did by the terms thereof become and was, upon the happening of the injury complained of, entitled to certain benefits, amounting to the sum of $60, which he received at the hands of said association, but plaintiff says that said benefits so received were not, nor was it ever intended or contemplated that they should be, in settlement or compensation of the injuries most wrongfully and negligently inflicted upon him by defendant. And further replying plaintiff expressly denies that said dues were paid him as a contribution for his releasing de-

fendant from its liability for its wrongs and injuries to him, or that he ever in any way executed to defendant a release for the injury complained of."

Bell had a verdict and judgment and the Railroad Company brings the case here on error.

It appears from the evidence in the record that the Burlington Voluntary Relief Department, mentioned in the answer of the Railroad Company quoted above, and hereinafter called the "Relief Department," is a department of the Railroad Company's service. The object in establishing the Relief Department is declared to be "the establishment and management of a fund to be known as the relief fund, for the payment of definite amounts to employes contributing thereto who are to be known as members of the relief fund, when under the regulations they are entitled to such payment by reason of accident or sickness, or in the event of their death, to the relatives or other beneficiaries designated by them." The relief fund consists of voluntary contributions from employes of the Railroad Company, income derived from investments, and interest paid and appropriations made by the Railroad Company. The Railroad Company has general charge of the Relief Department, guaranties the fulfillment of its obligations, takes charge of all moneys belonging to the relief fund, makes itself responsible for the safe keeping of such moneys, and pays to the Relief Department interest at the rate of four per cent per annum on monthly balances in its hands, supplies the necessary facilities for conducting the business of the Relief Department, and pays all the operating expenses thereof. There is also an advisory committee, which has general supervision of the operations of the Relief Department. This committee is composed of five members of the board of directors of the Railroad Company, and the contributing employes on each division of the Railroad Company furnish one member of the committee, and the general manager of the Railroad Company is *ex-officio* a member

8

and chairman of such committee. The moneys received for the relief fund are held by the company in trust for the Relief Department, and any money not required for immediate use is invested under direction of the advisory committee. All employes of the Railroad Company who are contributors to the relief fund are designated as members of the relief fund. No employe of the Railroad Company is required to become a member of the Relief Department. All employes of the Railroad Company who volunteer to and do become members of the Relief Department are divided into classes according to the monthly wages received. Those receiving the highest wages per month make the highest contribution to the Relief Department. Each member contributes monthly a specified sum according to the wages received. All employes of the Railroad Company who pass a satisfactory medical examination and are possessed of good moral characters are eligible for membership in the Relief Department. If a contributing member is under disability, that is, if he is unable to work, whether such disability arises from an injury received while at work or arises from sickness, he is entitled to be paid from the relief fund a certain sum per day. This amount varies according to the wages which the employe is receiving at the time his disability occurs. And in case of the death of the employe the beneficiary designated by him is entitled to be paid a specified sum according to the class of employes to which the deceased belonged. The employes of the Railroad Company, in order to become members of the Relief Department, make an application to it in writing, and in this application among other things they agree: "I also agree that in consideration of the amounts paid and to be paid by said [Railroad] Company for the maintenance of the Relief Department, the acceptance of benefits from said relief fund for injury or death, shall operate as a release and satisfaction of all claims for damages against said company arising from such injury or death which could be made by me or my legal representatives."

The evidence shows that this Relief Department was organized on the 1st day of June, 1889, and from that day to the 31st of December, 1891, the employes of the Railroad Company had paid into the Relief Department or relief fund $359,639.96; that the Railroad Company in the time aforesaid had paid to the relief fund, interest on the monthly balances of its money, $1,040.34; that there had been paid during said time to members of the Relief Department on account of sickness and death from sickness $187,885.50; during said time there had been paid to members of the Relief Department on account of accidents and deaths from accidents $193,070.35; that the Railroad Company during said time had paid the entire expenses of of the Relief Department; that no part of the relief fund moneys paid in by the employes had been used for defraying the expenses of the Relief Department; that from the organization of the Relief Department to December 31, 1891, the Railroad Company had paid out of its treasury for expenses of the Relief Department, for interest on monthly balances, and to make up deficiencies under its guaranty, $114,012.08. The undisputed evidence in the record is that Bell was an employe of the Railroad Company; that on the 27th day of October, 1890, he applied to the Relief Department for membership therein, such membership to take effect on the 18th of said month; that his application was approved and he became a member of the Relief Department on November 10, 1890; that he was a member in good standing in said Relief Department at the time he was injured; that he was paid during the time he was disabled by said injury the following sums:

December 15 to 31, 1890, 17 days.................... $17 00
January 1 to 31, 1891, 31 days..................... 31 00
February 1 to 11, 1891, 11 days.................... 11 00

Or a total of........................................ $59 00
That these payments were made to Bell and received by

him in accordance with the rules and regulations of the Relief Department, of which he was a member, and were paid to him on account of the injury for which he brings this action. Bell does not deny that he voluntarily became a member of the Relief Department; that he signed the application containing the agreement on his part that in case he was injured while in the employ of the company and accepted benefits from the relief fund on account thereof, that the acceptance of such benefits should be in settlement and discharge of the Railroad Company's liability to him for such injury; nor does he deny that during the time he was disabled from the injury sued for there was paid to him from the relief fund of the Relief Department on account of such injury the sums of money above stated, and that he accepted said money. It is not argued here, nor attempted to be shown either by pleading or evidence, that Bell did not voluntarily become a member of the Relief Department; nor that he did not execute the contract in question with full knowledge of its terms and effects. Nor is it claimed that he was induced to become a member of the Relief Department or to accept benefits paid him during his disability by any fraud, coercion, or mistake.

Counsel, for the purpose of overthrowing this defense, argue: (1) That Bell's agreement, that his acceptance of the benefits from the relief fund on account of his injury should operate as a release of his claim for damages against the Railroad Company for such injury, is without consideration; (2) that the act of the Railroad Company in participating in the organization of the Relief Department and conducting it is *ultra vires;* (3) that to enforce Bell's contract or release would be contrary to public policy.

If the contract of Bell is without consideration it must be because he received no consideration for the contract, or that the Railroad Company parted with no consideration by reason thereof. By reason of Bell's membership in the Relief Department, if he was disabled by sickness he be-

came entitled to certain sums of money out of the relief fund; if he was injured and thus disabled he became entitled to certain sums of money out of the relief fund; and if he died from any cause while in the service of the company and a member of the Relief Department, it became liable to a beneficiary designated by him for a specific sum of money. Here, then, was a consideration moving to Bell for the contract and promises he made and the contributions made by him to the Relief Department. The Railroad Company's guaranty of the obligations of the Relief Department and its assumption of the expenses of conducting the Relief Department constitute a consideration moving from it sufficient to support the promises of Bell and every other member of the Relief Department. (*Homan v. Steele*, 18 Neb., 652; *Pryor v. Hunter*, 31 Neb., 678.) If Bell had not been a member of the Relief Department, and after he had received the injury sued for herein had accepted from the Railroad Company the amount of money which he received from the Relief Department, or other sum of money, by virtue of his promise that the payment and acceptance of such money should be in settlement and discharge of his claims against the Railroad Company for damages for his injury, can it be doubted that the payment to and acceptance by Bell of such money, in the absence of fraud or mistake, would bar this action? The fact that Bell contracted and promised the Relief Department that if it paid him the money it did from its relief fund and he accepted such payments that then such payment and acceptance should be in settlement and discharge of the Railroad Company's liability for the injury, does not change the principle. "Where one makes a promise to another for the benefit of a third person, such third person can maintain an action upon the promise, though the consideration does not move directly from him." (*Shamp v. Meyer* 20 Neb., 223.)

The *ultra vires* argument.—For an act of a corporation

to be *ultra vires* such act must be beyond the express and implied powers given such corporation by its charter. The Railroad Company is a corporation. Bell in his replication to the defense under consideration has not set out the Railroad Company's charter, nor any part of it; nor is there any evidence in the record on the subject. We are therefore unable to say whether the act of the Railroad Company in participating in the organization and conduct of this Relief Department is within or without its express and implied powers as fixed by its charter. We certainly cannot presume, in the absence of all pleading and evidence, that the part taken by this Railroad Company in the organization and conduct of the Relief Department—confessedly organized from amongst its own employes and for their benefit—is a power neither granted nor permitted by its charter.

Should this release of Bell's be held void as against public policy? A contract or release similar to the one under consideration was considered and held not to be void as against public policy in *Johnson v. Philadelphia & R. R. Co.*, 29 Atl. Rep. [Pa.], 854. (*Owens v. Baltimore & O. R. Co.*, 35 Fed. Rep., 715; *State v. Baltimore & O. R. Co.*, 36 Fed. Rep., 655.) The argument at the bar is that the effect of Bell's release is to enable the Railroad Company by contract to exonerate itself from liability for the negligence of itself and servants. This is not a fair construction of the contract. Nothing in the rules and regulations of the Relief Department, nor in Bell's contract or release, released or attempted to release the Railroad Company from liability to Bell for negligently injuring him because he was a member of the Relief Department, contributed thereto, and such Relief Department had funds which Bell was entitled to have paid to him on account of his membership and injury. If the rules and regulations of the Relief Department or the terms of Bell's contract were such that his membership in the Relief Department, and its possession

of funds of which Bell had a right to avail himself, of themselves released or attempted to release the Railroad Company from liability to Bell for injuring him, then we agree with counsel that such rules and regulations and contracts would be void as against public policy. Again, if the rules and regulations of the Relief Department compelled him in case of his injury by the Railroad Company to accept the benefits and funds of the Relief Department in release and discharge of the Railroad Company's liability to him for such injury, then such rules and regulations and contract would be void as against public policy. But nothing in the rules and regulations of the Relief Department, and nothing in Bell's contract or release, obligates or compels him in case he is injured by the Railroad Company to accept the funds of the Relief Department in release and discharge of any claim he may have against the Railroad Company for injuring him, nor makes the funds themselves—though Bell is entitled to them and refuses to accept them—a release of the Railroad Company's liability. As was held in *Chicago, B. & Q. R. Co. v. Wymore*, 40 Neb., 645, neither the employe's membership in the Relief Department nor his execution of the contract under consideration was a waiver of the.employe's right of action against the Railroad Company for injuring him. In that case Wymore was a member of the Relief Department, and was killed through the negligence of the Railroad Company. After his death his widow accepted from the funds of the Relief-Department the death benefit to which she was entitled by virtue of being Wymore's widow and his membership in the Relief Department. She then brought a suit as administratrix against the Railroad Company for damages for negligently killing her husband. This suit was brought under chapter 21 of the Compiled Statutes, 1893; and we held that the right of action conferred by the statute was for the benefit of the widow and next of kin of the deceased who had lost his life through the neg-

ligence of the railroad company, and that the acceptance
by the widow of the death benefit from the funds of the
Relief Department was a release and discharge of her cause
of action against the Railroad Company given by that
statute for her own benefit; but that neither Wymore's
membership in the Relief Department, nor his contract
with it, nor the acceptance of the death benefit by the
widow, operated to bar or release her cause of action as
administratrix against the Railroad Company in favor of
Wymore's children.   We adhere to that case.   After Bell
was injured he had the option to decline payment from the
relief fund by reason of his injury, and rely upon his cause
of action against the Railroad Company, and take as com-
pensation for such injury what a jury might award him.
The acts of Bell in becoming a member of the Relief De-
partment and executing the contract under consideration did
not and do not bar his right of action against the Railroad
Company for negligently injuring him.   In other words,
by becoming a member of the Relief Department and by
executing the release in question he did not waive nor bar
any cause of action which might thereafter arise in his
favor against the Railroad Company by reason of being
injured or killed through the negligence of the Railroad
Company or its employes.   It was his action in accepting
payments from the relief fund after he was injured and
after his cause of action arose against the Railroad Com-
pany that now estops him.   Notwithstanding his agree-
ment and his membership in the Relief Department, what-
ever right of action he had against the Railroad Company
for the injury he received remained unaffected by such
membership and agreement; but after his injury, after his
cause of action arose, he made his choice between the ben-
efits which he could and did receive from the Relief De-
partment and what he might obtain by litigation, and, so
far as this record shows, he made such choice knowingly,
deliberately, and without fraud, coercion, or mistake, and

he must be bound thereby. (*Leas v. Pennsylvania R. Co.,* 37 N. E. Rep. [Ind.], 423.) The expression "contrary to public policy" we suppose means good public policy. This phrase has no fixed legal significance. It varies and must vary with the changing conditions and laws of civilizations and peoples. But we have been unable to discover anything in the contract made the subject of defense to this action unconscionable, contrary to law, or subversive of morals or good government. The judgment of the district court is contrary to the law and the evidence of the case and is reversed and the cause remanded.

REVERSED AND REMANDED.