## Charles H. Eckman v. Chicago, B. & Q. R. R. Co.

1. RAILROADS—*Release of Action by Member of Relief Department.*— An employe of the Burlington Railroad Company, who belonged to its relief department, in joining, agreed in writing " that in consideration of the amounts paid and to be paid by said company for the maintenance of the relief department, the acceptance of benefits from said relief fund for injury or death should operate as a release and satisfaction of all claims for damages against said company, arising from injury or death, which could be made by him or his legal representatives. In an action for damages resulting from an injury, *it was held* that the release contained in the agreement was a defense to the action.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 1, 1896.

OTTO GRESHAM and CHARLES ALLING, attorneys for appellant, contended that a railroad corporation of this State can not, by contract in advance, exempt itself if from liability to its employes for its gross negligence. Chicago, R. I. & P. R. R. Co. v. Harnon, 17 Ill. App. 640; Chicago, B. & Q. R. R. v. Maney, 49 Ill. App. 105; Illinois C. R. R. Co. v. Reed, 37 Ill. 485.

CHESTER M. DAWES and FRANK O. LOWDEN, attorneys for appellee.

The law has always favored the amicable adjustment of claims. We know of no reason why, after an injury received, a plaintiff should not be permitted to say he will take a certain amount in satisfaction of his claim, whether such amount was specified in a book of regulations or fixed by agreement of the parties at the time. The precise question involved has been presented to many courts, and has been uniformly answered against the plaintiff, except in a single case.

The cases in which this and similar relief departments have been sustained are as follows: C., B. & Q. v. Bell,

(Neb.) 62 N. W. Rep. 314; Johnson v. Phila. & Reading R. R. Co., 29 Atl. Rep. 854; 163 Pa. St. 127; Leas v. Penna. Co., (Ind.) 37 N. E. Rep. 423; Donald v. C., B. & Q. R. R. Co., (Iowa) 61 N. W. Rep. 971; Ringle v. Pa. Company, (Penn.) 30 Atl. Rep. 492; State use of Black v. B. & O. R. R. Co., 36 Fed. Rep. 655; Fuller v. B. & O., (Md.) 10 Atl. R. 237.

Opinion per Curiam.

This is an action on the case. The appellant, who was the plantiff in the court below, on August 29th sustained injuries while in the employ of the appellee, who was defendant below. Evidence was offered by the plaintiff tending to show negligence on the part of the defendant. It appeared on behalf of the defendant that the plaintiff was a member of what is known as the Burlington Relief Department, which is one of the departments of the defendant's service.

The object in establishing the relief department is declared to be "the establishment of a fund, to be known as the relief fund, for the payment of definite amounts to employes contributing thereto, who are to be known as members of the relief fund, when under the regulations they are entitled to such payment, by reason of accident, or sickness, or in the event of their death, to the relatives or other beneficiaries designated by them." The relief fund consists of voluntary contributions from employes of the railroad company, income derived from investments, and interest paid and appropriations made by the railroad company. The railroad company has general charge of the relief department, guarantees the fulfillment of its obligations, takes charge of all moneys belonging to the relief fund, and makes itself responsible for the safe keeping of such moneys, pays to the relief department interest at the rate of four per cent per annum on monthly balances in its hands, supplies the necessary facilities for conducting the business of the relief department, and pays all the expenses thereof. There is also an advisory committee, which has general supervision of the operations of the relief department. This committee

is composed of five members of the board of directors of the railroad company, and the contributing employes on each division of the railroad company furnish one member of the committee, and the general manager of the railroad company is *ex-officio* a member and chairman of such committee.

The moneys received for the relief fund are held by the company in trust for the relief department. Any money not required for immediate use is invested under direction of the advisory committee. All employes of the railroad company who are contributors to the relief funds are designated as members of the relief fund. No employe of the railroad company is required to become a member of the relief department. All employes of the railroad company who volunteer to and do become members of the relief department are divided into classes according to the monthly wages received. Each member contributes monthly a specified sum according to the class to which he belongs. All employes of the railroad company who pass a satisfactory medical examination, are possessed of good moral characters, are eligible for membership in the relief department. If a contributing member is under disability—that is, if he is unable to work, whether such disability arises from an injury received while at work or arises from sickness—he is entitled to be paid from the relief fund a certain sum per day. This amount varies, according to the contribution which the employe is making at the time his disability occurs. In case of the death of the employe, the beneficiary designated by him is entitled to be paid a specified sum according to the contract of membership which the deceased held.

The employes of the railroad company, in order to become members of the relief department, make an application to it in writing, and in this application among other things they agree: " That in consideration of the amounts paid and to be paid by said (railroad) company for the maintenance of the relief department, the acceptance of benefits from said relief fund for injury or death, shall operate as a

release and satisfaction of all claims for damages against said company arising from such injury or death which could be made by me or my legal representatives."

The relief department was organized on June 1, 1889. August 31, 1891, two days after the accident to plaintiff, the defendant had paid for operating expenses alone of the relief department, $82,958.98. It had also advanced toward the payment of benefits during such time on account of the insufficiency of contributions of members, the sum of $10,128.19. From June 1, 1889, to April 30, 1892 (this suit having been brought on May 4, 1892), the defendant paid for operating expenses of the relief department from its funds $110,538.63. On the 31st day of December, 1891, in accordance with its regulations, it crossed off charges against the relief fund for deficiencies which accrued up to that time, amounting to $20,275.55. It had advanced on account of further deficiencies accruing from January, 1892, to April 30, 1892, the sum of $19,441.27, making a total paid and advanced by the company from June 1, 1889, to April 30, 1892, of $150,255.45.

The amount paid by the defendant on account of sickness, and death from sickness, from June 1, 1889, to April 30, 1892, was $225,978, and the amount paid on account of accident, and death from accident, was $245,281.49. This latter amount included benefits, whether the injury received was while the employe was on or off duty.

The plaintiff made application for membership on July 18, 1890, and was duly accepted. He received in benefits the sum of $245, being the amount specified in the regulations to which he was entitled. He was also paid on account of the injury for nurses, medicine and surgical attendance a further sum of $121.90.

It was not disputed at the trial that these payments were made to the plaintiff and received by him in accordance with the rules and regulations of the relief department, of which he was a member, and were paid to him on account of the injury for which he brings this suit.

The defendant relied upon the facts above set forth as a

bar to the action, and the trial court directed a verdict in its favor.

The appellant assigns for error in this court such direction of the court below. The points upon which he relies are :

First. The Burlington Relief Association, as organized, and the method of its maintenance, is contrary to the public policy of this State.

Second. The contract of release made by appellant with appellee through the so-called relief association is *ultra vires* and void.

Third. If appellee can go into the insurance business, it must comply with the insurance laws of this State.

Fourth. Appellant should have been permitted to go to to the jury as to whether the association was in fact voluntary.

Fifth. It was a question for the jury as to whether appellant joined of his own free will, or was coerced into joining.

Sixth. It was a question for the jury whether in view of the fact that appellant was under the influence of opiates at the time of receiving the first payment from the relief association, he in fact released the appellant by receiving part of what he was entitled to receive from the association.

This case presents a question of great and permanent interest, which has never, so far as we are advised, been discussed in this State. The validity of such a defense as the appellee makes has been affirmed by many cases elsewhere, and we adopt the result, without committing ourselves to the whole argument, of C., B. & Q. R. R. v. Bell, 44 Neb. 44; 62 N. W. Rep. 314, which is a case not distinguishable from this. The questions raised by the last three errors assigned, would, if discussed, call for a review of considerable evidence, but as that discussion would be of no benefit to anybody, we content ourselves with saying that no error in those particulars was committed.

The judgment is affirmed.