Spear, J;
The ruling of the common pleas on the demurrer is assailed on the ground that the contract set up is invalid because: 1., It is prohibited by the act of April 2, 1890, 87 Ohio Laws, 149, “for the protection and relief of railroad employes,” etc; 2. Because it is against public policy; 3. For want of mutality;and 4. For want of consideration moving from the company to Cox for the agreement to release claims for damages.
In support, of the second defense, it is insisted that the act of April 2, 1890, as to the clauses referred to, is uneoustitutional because it strikes down the voluntary right to contract; that the contract is not in fact against public policy, whether declared so by the statute or not, and that the mutual beneficial stipulations and averments of fact abundantly show both mutuality and consideration.
1. It would be a needless waste of effort to discuss the constitutional question propounded, unless, upon an examination of the contract and the statute, it shall be found that such a contract is among those forbidden. First, therefore, we give attention to that inquiry.
The part of the statute to which attention is directed is the following:
“And no railroad company, insurance society or association or other person, shall demand, accept, require or enter into any contract, agreement, stipulation with any person about to enter, or in the employ of any railroad company whereby such person stipulates or agrees to surrender or waive any right to damages against any railroad *510 company, thereafter arising for personal injury or death, or whereby he agrees to surrender or waive in ease he asserts the same, any other right whatsoever. ”
To what sort of a contract does this language apply ? It is to be assumed that the legislature intended to confine its action in forbidding the making of contracts upon sabjects in themselves lawful, by persons sui juris, to such contracts as are inimical to the state, that is, against public policy, for the right to contract is one not given by legislation, but inherent, necessarily involved in the ownership of property and as a primary prerogative of freedom, (2 Wharton on Contracts, section 1061), and we should not construe the words of an act so as to restrain this right, where the conflict with public policy is not clear, unless the language will bear no other construction. As to the first clause perhaps it is sufficient to say that it clearly appears the contract does not come within the terms of the inhibition, for the reason that the employe does not therein agree to waive a right to damages thereafter arising for personal injury or death. He agrees simply that he will elect after the injury is incurred, which form of recompense he will demand.
In what essential does the second clause differ from the first? It is the same in effect as though it should be worded: “or .whereby, in case he asserts his right to sue the company for personal injury or death, he agrees to surrender or waive any other right whatsoever.” He may not stipulate that, in case' he sues the company for damages for personal injury, he will surrender any other right. What here is meant by the term “right?” Does it mean any fanciful claim which an ingenious *511 person may invent, or does it mean a tangible legal right, one resting on contract or in tort, which would be recognized and enforced by law? Common sense would say, it seems to us, that it means the latter. This leads to an inquiry as to the character of the right which is secured to an employe who becomes a member of the “voluntary relief department,” and entitled to the benefits of the “relief fund.” If the contract be valid it gives to the member a right, in case of disability on account of hurt or sickness, to receive certain payments from the relief fund so long as the disability continues ; but, as a condition of the exercise of this right, and as a modification of it, the member must disclaim any right to pursue the company in whose employ he is for • damages arising from the injury. That is, the right to the benefits is not, by the terms of the contract, an absolute right. It is, at best, a contingent right; and, if this be so, then it is not, unless the stipulation is to be overthrown as against public policy, a legal right after the party has elected to sue the company, which the law recognizes and will enforce, for the law will not enforce as an ultimate right, a claim which rests upon a condition which is repudiated by the party making the claim. Perhaps the point would be clearer if the party had, without accepting benefits, recovered • against the company and then sought to recover also the benefits against the fund. No one could possibly suppose, in such case, that his right to recover was absolute, or could in any aspect have a legal existence, or become the subject of a waiver, if the party’s own contract is to ' be observed. This for the reason that he has no other right to surrender or waive, because the *512 moment he asserts the right to sue the company, the other which is hut aright inchoate, by the very terms of the contract which gave it existence, disappears.
And if the rig’ht is not an absolute one in the one case how can it be in the other. Putting the con’ elusion in a sentence, the "second inhibition is not essentially different from the first; it is but an extension of it. That applies only to waiver of a right to damages arising from personal injuries or death; this extends to all rights whatsoever. But, in any case, the law contemplates a legal right.
Taking the statute as a whole; the contract inhibited is a contract which, by its terms, waives the right of action on the part of the employe, while the contract in question does not seek to waive the right of action, but expressly reserves it, and only gives to his election of remedies made after the injury, the effect of a waiver of the other remedy. To deny such a right would be to deny the right to settle controversies. The law favors the exercise of this right; it does not disapprove it.
The contract in question in Railway Co. v. Spangler, 44 Ohio St., 471, is of a. class prohibited bv this statute. In that case is was held that: “The liabilities of railroad companies for injuries caused to their servants by the carelessness of other employes who are placed in authority and control over them, is founded upon considerations of public policy, and it is not competent for a railroad company to stipulate with its employes at the time, and as a part of their contract of employment, that such liability shall not attach to it.”
We think the contract set up in the answer is not fairly within the inhibitory terms of the act, *513 when reasonably construed, and this conclusion makes it unnecessary to consider the question of the unconstitutionality of the statute.
2. Is the contract itself against public policy? To be so, it must, in some manner, contravene public right or the public welfare. It must be shown to have a mischievous tendency, as regards the public. And this should clearly appear. The ground urged is that it tends to make the company' less careful in the operation of its road; in other words, it encourages negligence. And if it be of that character, then it would contravene public policy and be void, in that it would have a tendency to induce the employment of men less prudent and careful, which would tend to endanger the property, and the lives of travelers, as well as of its employes. But this claim arises, we think, from a misconception of the contract; in assuming that, by the contract, the employe releases some future right of action against the company. On a previous page we have undertaken to show that such is not the case; that there is no waiver of any cause of action which the employe may become entitled to, and that it is not the signing of the contract, but the acceptance of benefits after the accident, that constitutes the release. When that occurs he is not stipulating for the future; he is but settling for the past. He accepts compensation for injury already received. A controlling distinction between Railway Co. v. Spangler, supra, and this ease is that in that ease the party bargained away his right to an action in advance, while in this case he retains whatever right of action he may have until after knowledge of all the facts. Then he elects between the relief fund and the treasury of the company; between a *514 relief sure, immediate and continuous, and one depending upon the hazards of litigation and certain to be delayed. If he is injured and the company is not liable, (a condition which follows in much the larger proportion of the accidents to employes on railroads) he* may accept the benefits; if the company is liable, he may decline benefits and sue. How can this injuriously affect the public? Is it not, on the other hand, a wise and humane provision for many of a class whom, without it, when sicjr or injured, would be compelled to look to public charity for aid? And does it not hold out an incentive to faithful, efficient service by encouraging expectation of benefits when the member becomes suxDerannuated, and encourage economy and thrift by laying up something against a time of need?
We fail to see how the contract, taken as a whole, encourages the employment of careless men. Those who apply for membership in this relief fund must not be over forty-five years of age, and they must pass a satisfactory medical examination. Thus, feeble men, and those made infirm by old age, are likely to be excluded, and a class of active, healthy men selected for the control of those operations of the road that require skill and care, all of which manifestly have a tendency to secure, in the interest of the public, competent service. and watchful vigilance. It cannot . be said that the beneficial feature of the contract tends to make the employe less careful, and, therefore, is inimical to the public, for to do so would be to condemn the whole theory of insurance, and especially that relating to fire and accident. Nor' is the contract a compulsory one. It is entered into voluntarily. If the employe con *515 ceives it to be for his interest to enter the relief class, he applies for the privilege; if not, he, with like exercise of his own judgment, stays out.
The liberty of contract, being one of those rights secured by our constitution, is not to be restrained upon any insufficient or mere fanciful conceit of what may possibly happen. The citizen who is sui juris has a right to make a contract beneficial to himself when neither immoral, fraudulent nor illegal, and he should not be restrained in the exercise of such, right unless the public welfare clearly compels it. Nor should the employment of corporate capital, where its use is for beneficial purposes, be interfered with unless the public welfare clearly demands such interference. If the laborer, having in mind the future, and desiring to provide against a condition of sickness or accident, joins a beneficial association having insurance features, and devotes a portion of his monthly earnings to that purpose; and if on the other hand, the corporation, actuated by a desire to advance its material prosperity by attaching its employes the more firmly to its interests, and by the humane purpose of contributing from its earnings, to their personal welfare, or acting from any other motive, good or bad, becomes a party to such contract, and renders, in effort and money, valuable assistance in effecting its beneficial purposes, why should the law assume, unreasonably and arbitrarily, to deny the exercise of these rights? We think it should not, and we fail to perceive how the contract in question contravenes any interest of the public. .Contracts similiar in every essential particular have been sustained by the courts of Pennsylvania, Maryland, Indiana, Iowa and Nebraska. Graft v. R. R. Co., 8 At. Rep., 206; *516 Johnson v. R'd Co., 163 Pa, St., 127; Ringle v. Penna. R. R., 164 Pa. St., 529; Fuller v. B. & O. Employes' Relief Assn., 67 Md., 433; Leas v. Penna. Co., 37 N. E. Rep., 423; Donald v. Ry Co., 61 N. W. Rep., 971; C., B. & Q. Rd Co. v. Bell, 44 Neb. 44. See also Owens v. B. & O. R. R. Co., (C. C., S. D, of Ohio), opinion by Sage, J., 35 Fed. Rep., 715; Martin v. B. & O. R. R. Co., ( C. C., D. of West Virginia), 41 Fed. Rep. 125; Otis v. Penna. Co. (C. C. D. of Indiana) 71 Fed. Rep., 136; Shaver v. Penna. Co., (C. C., N. D. of Ohio) opinion by Ricks, J., 35. W. L. B., 106 ; Bailey’s Master’s Liability for Injuries to Servants, 480; B. & O. R. R. Co. v. Bryant, 9 Ohio C. C., 332; and Griffith v. The Earl of Dudley, 9 L. R. Q. B., 357; 3 Elliott on Railroads, 2156, 2158.
3. Nor is the contract void for want of mutuality, nor for lack of consideration. Moved thereto by the stipulations of the employe members, the company assumes the obligation to take charge in part of the administration of the association, to pay all its operating expenses,to take care of its funds, pay interest thereon, and be responsible for their safe keeping, and to make appropriations to supply any deficiencies. The promises are concurrent and obligatory upon both ; both promise and both pay in consideration of promises and payment by the other, and the fact that third persons are interested does not impair the force of the obligation. If these stipulations do not supply consideration it would be difficult to frame such as would; and there being express assent to the terms of the contract by both parties, the element of mutuality is not wanting. The law upon this subject in Ohio is too well established to need elaboration. Judy v. Louderman, 48 Ohio St., 562. *517 See also Leas v. Penna. Co., supra, and Otis v. Penna. Co., supra.
Our conclusion is that the contract set up is not interdicted by the statute, and that it is neither against public policy, nor void for want of mutuality or consideration.

Judgment of the circuit court reversed and that of the common pleas affirmed.