URANIA YOUNG v. HERSHELL N. SAGE.

FILED OCTOBER 2, 1894.   No. 4938.

1. **Instructions.** It is not error to refuse to give instructions requested to be given which have been substantially expressed in the instructions prepared and read to the jury by the court on its own motion.

2. **Damages: Negligence: Fence on Highway: Collision: Instructions.** The action of the district court in refusing to give to the jury certain instructions requested by the defendant examined, and *held* no error in such refusal.

3. **Evidence on Former Trial: Witnesses.** To render the testimony of a witness given during the former trial of a cause admissible in evidence during a subsequent trial it must be shown that the witness, whose testimony it is thus sought to introduce, is absent from the state or without the jurisdiction or beyond reach of the process of the court.

Error from the district court of Lancaster county. Tried below before Tibbets, J.

*Lamb, Ricketts & Wilson,* for plaintiff in error.

*Abbott, Selleck & Lane, contra.*

Harrison, J.

This action was instituted before a justice of the peace in Lancaster county by H. N. Sage, and from a judgment there rendered was appealed to the district court, where Sage filed a petition as follows:

"Comes now the plaintiff, and for his cause of action against the defendant complains and alleges:

"1. That on the 12th day of March, 1889, and for a long time continuously prior thereto, there was a public highway running along the west line of northwest quarter of section 15, township 10, in range 7 east, in Lancaster county, Nebraska; said highway was opened for public travel in due manner and in all respects as provided by law on or about the —— day of ——, 1872, and ever since said date, and up to and including the 12th day of March, 1889, has been in constant and common use as a public highway.

"2. That on or about the —— day of ——, 188—, and prior to the said 12th day of March, 1889, and prior to the injury hereinafter complained of, the said defendant, by

herself, her agents and employes, wrongfully, willfully, carelessly, and negligently constructed and built a certain barbed wire fence within said public highway and then and thereafter permitted the same there to remain without taking any precaution whatever to prevent injury thereby; said fence was constructed of wire, armed with large sharp and dangerous barbs and points, and was built a long distance into said highway, to-wit, sixteen and one-half feet, and extended along and beside and dangerously near the traveled track, to-wit, within five feet of said track.

"3. That on said 12th day of March, 1889, plaintiff was the owner of a certain horse, buggy, and harness.

"4. That on said 12th day of March, 1889, as plaintiff was lawfully traveling upon said highway and was properly and carefully conducting said horse, buggy, and harness over and along the same, and in the beaten and traveled track hereinbefore described, and was in the exercise of due and ordinary care in all respects, and especially in the management and control of said horse, said horse became startled, and without any fault or negligence whatever on the part of the plaintiff, shied sidewise into and upon said fence, and said buggy was thereby overturned and broken and said harness cut and torn, and said horse was by said wires and barbs cut, bruised, mangled, and torn so as to be totally disabled for any kind of service or labor whatever for a long period of time, to-wit, two months, and said horse was further permanently disfigured and scarred and permanently injured in and about his feet and legs, to the damage of plaintiff in the sum of $125; that plaintiff was obliged to expend, and did expend, for medical treatment, medicines, bandages, liniments, ointments, and appliances in attempting to cure said horse of his injury the sum of $65.10; that he was compelled to pay for repairing said buggy the sum of $7.75, and to repair said harness the sum of $3.50; in all to plaintiff's damage in the sum of $200. Plaintiff therefore prays

judgment in the sum of $200, with interest and costs of suit."

To which Urania Young, defendant, filed the following answer:

"Comes now the defendant, and for her answer to the plaintiff's petition herein filed says that she denies each and every allegation contained in said petition; and for a further answer the defendant says that whatever damage, if any, the plaintiff sustained to his horse and buggy and harness was the direct result of the plaintiff's neglect and the vicious character of his horse, and that the neglect, if any, on the part of this defendant is not the proximate cause of said injury or damage."

The reply to this answer, by Sage, was a denial of all new matter contained in the answer. The result of a trial of the issues to a jury was a verdict in favor of Sage, upon and in accordance with which, after hearing and overruling a motion for new trial, the court rendered judgment. The plaintiff in error has prosecuted a petition in error and removed the case to this court, seeking a review of the proceedings during the trial of the case in the lower court. Of the errors alleged in the petition there are but three insisted upon or argued in the brief filed by counsel for plaintiff in error, viz.:

"The court erred in refusing to give the first paragraph of the instructions requested by the defendant in the court below.

"The court erred in refusing to give the second paragraph of the instructions requested by the defendant in the court below.

"The court erred in refusing to admit the testimony of the witness A. C. Ricketts as to what the witness Yandt testified to in the justice court."

The first two of these may, we think, be properly considered together. Instructions numbered 1 and 2, requested to be given by plaintiff in error, read as follows:

"1. The jury are instructed that although they find from the evidence that defendant's fence encroached upon the limits of the highway at the place of the alleged injury, and that the plaintiff was driving his horse with due care, yet if the plaintiff's horse, by reason of fright or viciousness, had become uncontrollable and was in the act of running away at the time of coming in contact with the defendant's fence, your verdict should be for the defendant.

"2. In order that the defendant should be liable in damages for the alleged injury it is necessary that the fact that the defendant's fence encroached upon the limits of the highway was the proximate cause of the injury and not the remote cause; and if you find from the evidence that the plaintiff's horse, prior to the time he struck the fence, had become unmanageable and was in the act of running away, this would be the proximate cause of the injury, and not the fact that the defendant's fence encroached upon the highway, and your verdict should be for the defendant." .

It is contended by counsel for plaintiff in error that by these instructions they sought to direct the attention of the jury to the propositions that if the plaintiff in the district court (Mr. Sage) was not using due care at the time of the occurrence upon which the action for damages in this case is predicated, he was not entitled to recover; and further, that it was the viciousness of the horse and its fright at some calves or objects by the roadside which caused it to become unmanageable or uncontrollable, which comprised the proximate cause of the injuries or damages resulting from what occurred, and not the fence against which the horse ran or threw itself and the buggy.    Whether the incidents and circumstances of the fright of the horse, its viciousness, if the fact that it possessed any such traits, or acquired habits, was proved, can be assigned as the proximate cause of the injuries or damages, rather than the unlawful and prohibited act of Urania Young in placing an obstruction in the highway, by erecting and maintaining

therein the barbed wire fence against which the horse jumped and pulled the buggy, is a question upon which, if we turn to the authorities upon the definition and application of the doctrine of the proximate cause for an answer or solution, we will discover much diversity and contrariety of opinion; but a decision of this case does not, it seems to us, necessarily involve a discussion or determination of this point, hence it will not be examined or decided; but conceding for the purpose of the argument here that it was proper and right that the jury should be instructed on the proposition embodied in the foregoing requests 1 and 2 of plaintiff in error, we think they were fully covered by the instructions given by the court on its own motion. The court fully instructed the jury in regard to the highway, its location and establishment, and the burden of proof, etc., and further instructed them as follows:

"6. If you find from the evidence that the plaintiff's horse, while being driven along the highway in a careful and prudent manner, became frightened at objects near the road and shied from his course, and if you further find from the evidence that the horse in so shying acted as a horse of reasonable docility and training might act under the same circumstances, then the fact of the horse so shying would not defeat the plaintiff's right of recovery. The occurrence must be attributed to one of the casualities of the road. It would be otherwise, however, if you would conclude from the evidence that the circumstances were not such as to frighten a horse of reasonable docility and training and that the shying of plaintiff's horse was caused by a previously acquired vicious habit.

"7. If a horse driven with due care upon a highway becomes by reason of fright actually uncontrollable, so that his driver cannot stop him or direct his course, or exercise or regain control over his movements, and in this condition comes upon a fence in the highway, by which an injury is occasioned, the owner of the fence is not liable un-

less it appears that the accident would have occurred if the horse had not been so uncontrollable; but a horse is not to be considered uncontrollable in this sense if he merely shies or starts, or is momentarily not controlled by his driver."

"4. In order to entitle the plaintiff to recover, the plaintiff must establish that the defendant was negligent in the acts complained of, and that the accident complained of and the damages sustained by reason thereof were not contributed to in any way or manner by any negligent or careless act of the plaintiff. It would be negligent for the defendant to place in the highway, in close proximity to the traveled and beaten track, a barbed wire fence which might occasion damage to travelers by reason of the ordinary casualities that travelers are liable to encounter while traveling said highway, and it would devolve upon the plaintiff while traveling upon said highway to use ordinary care in driving and managing his horse and avoid accidents that might happen; and if the horse driven by the plaintiff would be found from the evidence to be spirited and liable to fright, then it would devolve upon the plaintiff and he would be held to use a greater degree of care than otherwise."

In the fourth the question of the contributory negligence or care in driving and managing the horse is fully covered, and in the sixth and seventh the occurrence being attributable to the ugly habits or viciousness of the horse or its having become wholly unmanageable through fright; and these, constituting the proximate cause, are fairly set forth and presented; consequently the rights of plaintiff in error were not prejudiced by the refusal to give the instructions 1 and 2 referred to in the petition in error.

During the progress of the trial in the district court one A. C. Ricketts was called as a witness in behalf of plaintiff in error, and the following is the record of his examination and the further proceedings in reference to evidence which it was desired to elicit from him :

Q. Were you present at the trial of this case in the court below?

A. Yes, sir.

Q. Was a witness there examined by the name of Yandt, who was with Mr. Sage at the time of the accident?

A. Yes, sir.

Q. You may state to the jury what the witness, Mr. Yandt, when on the stand in that trial, said concerning the manner of the happening of this accident.

Objected to, as incompetent, irrelevant, and immaterial, and as calling for hearsay testimony. Sustained. Exception.

Defendant here offers to prove by this witness that one Mr. Yandt was a witness in this case in the justice court in the trial thereof, and, after being duly sworn to testify to the truth, the whole truth, and nothing but the truth, testified that he was with the plaintiff at the time of the occurrences in controversy; that the horse in controversy became frightened; that the first move of the horse was violent and sufficient to break the lines, and that the horse then turned immediately to the left, overturning the buggy and throwing the witness and plaintiff to the ground, and that from there he turned toward the fence of defendant; and further, that the first move of said horse overturned the vehicle and threw them both on the ground. Objected to, as incompetent, irrelevant, and immaterial, and as calling for hearsay testimony. Sustained. Exception.

It appears that the witness Yandt, who is referred to in the above offer to prove, was examined during the trial of this case before the justice of the peace, and that his evidence then and there given might under some circumstances be repeated during a subsequent trial of the case, and thus introduced, was announced as the decision of this court in the case of *Omaha Street R. Co. v. Elkins*, 39 Neb., 480, where it was held: "Where a witness is shown to be absent from the state, his testimony given at a former trial of the

cause is admissible in evidence if otherwise unobjectionable." (See, also, *City of Omaha v. Jensen*, 35 Neb., 68.)

During the cross-examination of H. N. Sage in the district court he was interrogated with reference to this witness Yandt, and answered as follows:

Q. This man Yandt that was with you, he was working for you at the time?

A. Yes, sir.

Q. He was a witness in this case in the lower court?

A. Yes, on the opposite side.

Q. On what?

A. Mr. Young subpœnaed him.

Q. You put him on the stand, didn't you?

A. I don't remember whether my attorney called on him or not.

Mr. Lane: I will say we did.

Q. When did he leave the county?

A. I can't say just the time. It was somewheres, I guess, a little better than a year ago.

Q. Has he been back to your knowledge?

A. I don't know. I don't think he ever has.

Q. Do you know what business he went into out west?

A. Yes, he went out there to try farming.

Q. That is in Red Willow county?

A. That is out here, what they call Red Cloud.

Q. Have you had any correspondence with him since he went?

A. No, sir; I never have.

It is one of the indispensable conditions which entitles a party to the introduction of evidence of the nature offered in this case, and which it is alleged the court erred in excluding, that the witness, whose testimony it is thus sought to bring to the attention of the court or jury, is absent from the state, or without the jurisdiction or beyond the process of the court wherein the case is on trial, and it devolves upon the party desiring to use the evidence to satisfy

the court that such is the fact, unless it is admitted; in other words, the foundation must be laid for its introduction. The portion of the examination of Sage which we have quoted is all the showing or proof of any kind there is in the record which refers to the whereabouts of the witness Yandt, and the most that can be claimed for it is that it discloses that Yandt left the county to go to another county almost a year prior to the trial, and that Sage did not think he had ever been back, but he did not know. Clearly this did not establish the fact that the witness Yandt was not within reach of the process of the court, or could not be obtained as a witness, and was not sufficient to entitle the plaintiff in error to introduce through the medium of another witness the testimony as detailed by the witness Yandt during the former trial of the case. We conclude that the judgment of the district court was right and must be

AFFIRMED.