## VICKERS v. CHICAGO, B. & Q. R. CO.

### (Circuit Court, N. D. Illinois. December 6, 1895.)

1. MASTER AND SERVANT—NEGLIGENCE—EMPLOYES' RELIEF ASSOCIATIONS—CONTRACT RELEASING MASTER.

  A railroad employé who, upon becoming a member of a voluntary relief association, composed of employés, and to whose funds the railroad company is bound to contribute in case of deficiency, signs, without fraud or undue influence, a contract that in case of injury he shall elect either to take the benefits provided by the association or have his action against the company, cannot avoid the effect thereof on the ground that he signed the agreement without reading it or understanding its purport, and that he was at a disadvantage in dealing with the company. Miller v. Railway Co., 65 Fed. 305, disapproved.

2. SAME—EXERCISE OF ELECTION—IGNORANCE OF FACTS.

  The fact that at the time of receiving relief from the association the employé is not aware of the strength of his case against the company, is ignorant of certain important facts and of the witnesses by whom he can prove them, is to be regarded merely as his misfortune, and does not avoid the effect of his election, in barring an action against the company.

This was an action by Joseph Henry Vickers against the Chicago, Burlington & Quincy Railroad Company to recover damages for personal injuries received in its service. Defendant moved the court to direct a verdict in its favor.

S. K. Daw, for plaintiff.
Chester M. Dawes, for defendant.

ALLEN, District Judge (charging jury). Yesterday afternoon a motion was made in this case in effect that the court instruct the jury to find for the defendant, upon the close of the plaintiff's rebuttal. Several questions have been argued in connection with the motion, and I conceive that it is of great importance, not only to the plaintiff, but as a question of law in a general sense. The ground of the motion substantially is, as presented by counsel for defendant, that the plaintiff, who, before this accident occurred, became a member of the voluntary relief association or relief department of the defendant railroad company, made a contract, in substance, by which he agreed that if he should suffer from accident—receive injury, in other words—he should elect to take the benefits provided by the by-laws and regulations of this relief association, or have his action against the defendant. It is shown in this case that after his serious injury, resulting in the necessary amputation of his left arm (and it is contended—and perhaps that contention is supported by evidence—that he was seriously injured in his spine and the back portions of his body), he received from this fund,—this relief fund,—on account of

such injuries and sickness consequent thereon, some $48. The facts in connection with it are, I believe, not disputed. It is shown that checks were drawn, indorsed by him, the money paid from the relief fund, and, as far as the evidence goes, appropriated by the plaintiff. There is no denial of that. Now, the effect of this act of his is the important matter for consideration. It is said on the part of the plaintiff that this clause in the application, which is a part of the contract, is a misleading clause; that it is a device by the company with a view of relieving itself from the obligations—the legal obligations—which it incurred through its negligence; that at the time the plaintiff signed the application he was not aware of its import; that he was at a disadvantage with the defendant; that the entire relief fund department was a cunningly devised scheme to entrap persons, and shield the company from just responsibility; and much contention on that line, and very earnest contention, is made; and, indeed, one authority has been adduced, the decision being made in the Eighth circuit, in Colorado, in support of that view. Miller v. Railway Co., 65 Fed. 305. I am unable to reach the same view in this matter that was held by the very able circuit judge in the Eighth circuit. So far as I have learned from the evidence (and I have watched it with a great deal of interest), no improper means or influences were brought to bear to induce the plaintiff to sign this application to become a member of this benefit association,—relief association, I believe, technically, is the name of it. It was suggested to him that it was an association of the employés of the road entirely, as I understand it; limited to them; that it was a good arrangement; that it was for his benefit; it would prove to be for his advantage to become a member, and that he had better do so. The usual persuasive arguments, or, at any rate, the ordinary arguments, were adduced, and his judgment was addressed in the matter, and he finally signed the application. But such influences as those do not avoid the contract. It may be (he says himself) that he did not read it over, or, if at all, not carefully; that he did not fully know all there was in it. But there is no statement that he could not read, no denial of the fact that he could read, so that it would seem to be admitted that he could; that there was a paper laid before him, and that he signed it, as others did, and became a member, in the absence of any fact which would avoid the act of membership on account of fraud or undue influence. It has been too long settled in this country to admit now of doubt that when a man is making a contract, and can read it, the presumption is that he does so; and when he signs without reading a written or printed contract, as his voluntary act, in the absence of any fraud whatsoever, he will not be heard to say that he did not understand its legal import. That cannot be permitted, because some men—I am not saying that the plaintiff was,—some men are careless, and never look into anything. But contracts must be carried out according to their import, when they are fairly entered into. This relief association is supported, it seems, to some extent, by what may be called the "assessments" or "contributions" of the members, and where there is a deficiency the company makes it up, so as to keep it in a solvent condition,—able to

pay at all times upon the demand of its members in case of sickness or accident. It is said that it is an insurance company, and, being an insurance company, it is not organized and carried on according to the laws of the state of Illinois. I do not know that it is necessary for me to decide whether it is an insurance company or not. It does not purport to be. I do not feel called upon to give this arrangement of the company with its employés (for that is what it is in substance) any name to characterize it, or to put it in any particular category. It does not purport to be an insurance company. It is not organized on that idea at all, but is an arrangement between the corporation and the employés, intended to be for the benefit, perhaps, of the employés, and, it may be, indirectly of the corporation. The corporation ought to have a desire to do everything that is reasonable for the welfare and benefit of its employés. There ought to be a mutual interest on the part of the employés and employers, each to advance the interests of the other. And I do not think that, because it may have some of the elements or features of an insurance company, and because it has not complied with the law in reference to insurance companies in Illinois, I would be allowed to say that therefore it is absolutely void. I cannot think that for a moment. The Wabash, I know, has had for years an arrangement by which hospitals are maintained. There is one maintained in the town where I live, purchased at a large cost, and owned as here. There all employés who entered the service of the company, of a certain class (conductors, engineers, brakemen, and perhaps others), were required to contribute a certain portion of their earnings; a small per cent. is taken from their monthly pay, and goes to the maintenance of this hospital. The company has its surgeons and nurses there, and people to attend to those who take sick or meet with accidents. This is understood by every one to be mutually beneficial. Of course, the employés pay for that wholly. In this case the members do not pay wholly, because, if there is a deficit, the company seems to have made it up,—not only has done so, but is bound to do so.

There being no contention but what the plaintiff received, or elected to receive, these benefits from the relief association, or relief fund, it is insisted (and I have given that view of the case the best consideration I could) that at the time the plaintiff took this money—this $48—from the association, he did not know the strength of his case against the company; that he did not know certain important facts that he could prove, and by what witnesses he could prove them; and they have been specified (such as that the engineer in charge of the engine that ran over him was intoxicated, or running at a high and reckless rate of speed in defendant's yards, when the injury occurred, and perhaps other facts); that he did not know by whom he could prove these facts until after he received this money. No authority has been cited in support of the position that ignorance of the strength of his case at the time that he made his election would avoid the effect of that act. I have been thinking over the proposition, and I asked counsel to restate it. There is not an element of fraud in this which can be imputed to the defendant.

It was a mere misfortune that the plaintiff did not know the strength of his case; a mere misfortune of the plaintiff not to find out witnesses who would testify to facts which would have enabled him, according to his view, to recover; and, not being in possession of this knowledge, which would, according to his theory, make a case against the company, he thought he had better take what he could get from the relief fund of which he became a member. It must be borne in mind that the plaintiff himself testified to witnessing this fast running at the time he was injured, and to the substance of all the damaging facts, according to his contention, that it is now claimed he was supported in by evidence discovered after he elected to and received the money from the relief fund. I doubt if any authority, either in the text-books or in any well-considered case, can be cited in support of this view. At least I have not been able to find it, and my attention has not been directed to any. Reflecting on the matter, I cannot think that it is sound. In fact, I am satisfied it is not. I supposed that the theory of the plaintiff, when the case was being tried, and after this evidence had been introduced, was that at the time of this acceptance of the benefits by the plaintiff he was acting under the influence of fraud by defendant, or other improper means brought to bear to produce that result. There is no doubt but what fraud would avoid it. There is no doubt but what any sort of undue influence (which is another species of fraud) would avoid it. But to say as a proposition of law that the want of knowledge as to the exact facts and full strength of the case would avoid it, is far beyond where I have the right to go, according to my conception of the law. It is not necessary to say that I reach this conclusion with hesitation, and that I sympathize with the unfortunate always; and especially do I act with reluctance in taking any man's case from a jury before whom he has placed it for decision, and if there was any question of fact disputed for them to pass on I would not do so. I have done so very rarely. But the way it occurs to me, I could not sustain a verdict if it was rendered in favor of the plaintiff. I do not know of any ground on which it could be placed, according to my view. Of course, I am liable to error. According to the way I look at plaintiff's case, it cannot be sustained. Then, from my view, it will do the plaintiff no good whatever to get a verdict, even if the jury should find that he was entitled to one. The jury are to judge alone of the facts of the case (and all so answered), and not of the law. They said they were impartial (I have no doubt they were), and would pass upon the facts without reference to there being a natural person on one side and an artificial party on the other; that they would take the facts from the witnesses and the law from the court, and I have no doubt that they are ready and willing to do so.

One feature has added to my embarrassment with reference to the matter, and increased my sympathy. The plaintiff has borne himself in his evidence in a manly way, and has shown a disposition to tell the facts (and I have no doubt he has) in every particular, and he has made a mistake, perhaps, as it turned out, as far as his own good is concerned, in accepting those benefits; but it has been dis-

covered afterwards, and, no doubt, if he had known what the effect would be, he would have acted differently. But a mere error of judgment cannot be relieved against in a court of law, and does not give me any right or excuse to fail in carrying out the law as I understand it, and you are instructed, gentlemen, to return a verdict in this case for the defendant, and you can be discharged from the further consideration of the case.