CHARLES A. ECKMAN

*v.*

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD CO.

*Opinion filed November 8, 1897.*

1. CONTRACTS—*contract between relief department of railroad and an employee—when not against public policy.* A contract of membership between a railroad employee and the voluntary relief department of the railroad, a beneficial insurance association largely supported by the railroad company, which permits the employee, in case of injury, either to sue the company for damages or accept the benefits of the relief fund, but which makes such acceptance a release and satisfaction of his damages, is not against public policy.

2. ACCORD AND SATISFACTION—*when the acceptance of benefits from relief department of railroad bars suit for damages.* The voluntary acceptance by a railroad employee, after receiving an injury, of the benefits provided for in his contract of membership in the relief department of the railroad company, with knowledge that such contract provides that such acceptance will operate as a satisfaction of further claims against the railroad on account of such injury, is a bar to a subsequent suit for damages.

3. CORPORATIONS—*one receiving benefit of performance of contract by corporation cannot avail of ultra vires.* Where a contract not immoral nor forbidden by statute has been in good faith fully performed by a corporation, and the other party to the contract has received the full benefit of such performance, he cannot avail of the defense that the contract was *ultra vires* the corporation.

MAGRUDER, J., dissenting.

*Eckman v. C., B. & Q. R. R. Co.* 64 Ill. App. 444, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

This was an action on the case, in the Superior Court of Cook county, by Charles A. Eckman, the appellant, against the Chicago, Burlington and Quincy Railroad Company, the appellee, for damages for injuries sustained while in the service of appellee, at Buda, Illinois. The declaration charged that the injury was caused by the

negligence and recklessness of defendant. A plea of the general issue was entered and a trial had before a jury.

The evidence showed that on August 29, 1891, while a freight train was standing on the main track, the appellant was directed by the foreman to crawl under the engine and tighten up a valve, and while so under the engine another train ran into the rear end of the freight train, thereby forcing the engine forward and dragging appellant quite a distance, breaking his leg and ankle, etc., whereby he was seriously injured. The railroad company relied upon the fact that the plaintiff was a member of the Burlington Voluntary Relief Department, and that he had received the benefits provided by that department, as a complete defense.

The Burlington Relief Department was organized on June 1, 1889, pursuant to a resolution of the board of directors of the appellee company, and its object is declared to be "the establishment and management of a fund, to be known as the 'Relief Fund,' for the payment of definite amounts to employees contributing thereto, who are to be known as members of the relief fund, when, under the regulations, they are entitled to such payment by reason of accident or sickness, or, in the event of their death, to the relative or other beneficiaries designated by them." This fund consists of voluntary contributions from the employees, income derived from investments and from interest paid by the company, and appropriations by the company when necessary to make up deficiencies. The railroad company has general charge of the department, guarantees the fulfillment of its obligations, pays interest at four per cent per annum on monthly balances in its hands, supplies all the necessary facilities for conducting the business of the department, and pays all its operating expenses. There is also an advisory committee having general supervision of the department, which consists of the general manager of the appellee as chairman, six members selected by the employees of the dif-

ferent divisions of the railroad company and six members selected by the board of directors of the company, the chairman having no voice except in case of a tie. The company agrees to pay any deficiency in the amount required to meet the claims on the fund. No employee is required to become a member of the relief fund, and any member may withdraw altogether at the end of any month. The members are divided into different classes, depending upon the amount of their contributions. Each member contributes monthly a specified sum according to the class to which he belongs, which is deducted from his wages and placed to the credit of the relief fund. All employees of the company who pass a satisfactory medical examination are eligible for membership. If a contributing member is under disability,—that is, if he is unable to work,—whether such disability arises from an injury received while at work or from sickness, he is entitled to be paid from the fund a certain sum per day, varying according to the contribution which he is making. In case of his death, the beneficiary designated by him is entitled to be paid a specified sum as designated in the membership contract. The regulations also provide a form of application, which was used by the appellant, in which the appellant agrees to be bound by the regulations of the relief department; that a certain specified portion of his wages shall be applied as a voluntary contribution for the purpose of securing the benefits provided; that this application, on approval by the superintendent of the relief department, shall make him a member of the relief fund and constitute a contract between him and the company; that his leaving the employment of or discharge by the company shall terminate the contract, except as to benefits accrued and as to death benefits. It also appoints the beneficiaries in case of death, and contains the following agreement: "I also agree, that in consideration of the amounts paid and to be paid by said company for the maintenance of said

relief department, and of the guaranty by said company of the payment of said benefits, the acceptance by me of benefits for injury shall operate as a release and satisfaction of all claims against said company and all other companies associated therewith in the administration of their relief departments, for damages arising from or growing out of said injury." The regulations provide further, that should a member or his legal representative bring suit against the company for damages on account of injury or death of such member, payment of benefits on account of the same shall not be made until such suit is discontinued, and that if the suit shall proceed to judgment, or be compromised, all claims on the relief fund for benefits on account of such injury or death shall be thereby precluded.

The relief department, as we have seen, was organized on June 1, 1889. August 31, 1891, two days after the accident to appellant, the appellee had paid for operating expenses alone of the relief department, $82,958.98. It had also advanced toward the payment of benefits during such time, on account of the insufficiency of contributions of members, the sum of $10,128.19. From June 1, 1889, to April 30, 1892, (this suit having been brought on May 4, 1892,) the appellee paid for operating expenses of the relief department, from its funds, $110,538.63. On December 31, 1891, in accordance with its regulations, it crossed off charges against the relief fund for deficiencies which occurred up to that time, amounting to $20,275.55. It had advanced on account of further deficiencies occurring from January 1, 1892, to April 30, 1892, the sum of $19,441.27, making a total paid and advanced by the company from June 1, 1889, to April 30, 1892, of $150,255.45. The amount paid on account of sickness, and death from sickness, from June 1, 1889, to April 30, 1892, was $225,978, and the amount paid on account of accident, and death from accident, was $240,281.49. This latter amount includes accident benefits, whether the injury was received

while the employee was on or off duty. In addition the appellee railroad company had given office rent to the department, and also the services of the officials and clerks of the operating department in transacting the relief department business, for all of which no charge was made. The contributions of the members have never been applied to any other purpose than the payment of benefits. No part has ever been used for the payment of expenses. At the close of 1890 the membership of the relief department was 9407. At the close of 1891 it was 10,336. At the close of 1892 it was 12,283. During those periods the number of men employed was somewhere between 25,000 and 30,000.

The appellant, Eckman, made application for membership in the Burlington Voluntary Relief Department on July 18, 1890, which application was approved August 4, 1890. It provided that $2.10 should be deducted from his wages monthly for the purpose of securing the benefits provided for a member of the second class, with twice additional death benefit of the first class. These benefits, as shown by the book of regulations, were, for disability by reason of accident one dollar for each day of a period not to exceed fifty-two weeks, with fifty cents a day thereafter during the continuance of the disability. Any bills for surgical attendance were to be paid by the relief department. The two additional death benefits of the first class were $250 each, which, with the $500 belonging to the second class, made the total death benefit $1000, to which his beneficiary would have been entitled in case of death. The appellant received $245 for benefits, being the amount he was entitled to under the regulations. There was also paid on account of the appellant for nurses, medicine and surgical attendance the sum of $121.90. The receipt of these amounts as benefits due him from the relief fund was not disputed. The appellant claims that he joined the relief department by coercion, and that when he received the first payment he was

not conscious of what he was doing, on account of being under the influence of opiates at the time, and that therefore he had not made a conscious election between the two alternatives offered him by the relief fund, either to accept its benefits or to abide the event of a suit for damages, its rules precluding a member from doing both. The court instructed the jury to find for the defendant below, the appellee here. Appellant appealed to the Appellate Court for the First District, which court affirmed the judgment, from which judgment he has appealed to this court.

OTTO GRESHAM, and CHARLES ALLING, Jr., for appellant.

CHESTER M. DAWES, and FRANK O. LOWDEN, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The real controversy in this case is not whether the injury to the appellant complained of was caused by the negligence of the appellee company, but whether the receipt by appellant of the benefits provided by the company under its contract with appellant, through its relief department, mentioned in the record as the Burlington Voluntary Relief Department, after the happening of the injury, constituted a sufficient defense to the action.

It was not disputed that after the happening of the injury appellant received, through this department of the company, in installments, from time to time, the aggregate sum of $245 as such benefits on account of the injury and under his contract of membership, and that there was also disbursed by said department for appellant, for nurses, medicine and surgical attendance, the sum of $121.90; but it is contended, in the first place, by appellant, that the company could not, by a contract in advance, exempt itself from liability to its employees for its gross negligence; that such a contract would be con-

trary to public policy and void. The correctness of this position is undoubted, and it is not disputed on behalf of appellee, but its contention is that the contract here in question is not of that character; that, on the contrary, it merely provides for an accord and satisfaction after the injury has been received and at the election of the injured employee, and that after the injury in this case there was such accord and satisfaction, and that the same is a complete bar to a recovery in this suit.

Contracts of this character have been the subject of judicial investigation in many cases in different States, and it has been almost uniformly held where the question has arisen as in this case, that they are not void, as being against a sound public policy. As said in *Chicago, Burlington and Quincy Railroad Co.* v. *Miller,* 76 Fed. Rep. 439, by the United States Circuit Court of Appeals for the Eighth District: "The various courts which have had this question under consideration appear to agree that the stipulation in question is not opposed to sound public policy, but, on the whole, is conducive to the well-being of those whom it immediately affects, inasmuch as many railroad employees, owing to the dangerous character of their employment, are hurt without any culpable negligence on the part of their employer, and inasmuch as the employee retains, until after he sustains an injury, the right to elect whether he will sue his employer for negligence or accept benefits from the association. It also appears to be agreed that the obligation assumed by the employer to maintain and support such association by contributing the funds necessary for that purpose creates a privity of contract between the employer and all the members of the association, and at the same time furnishes a sufficient consideration to support such contract." Substantially the same language and reasoning have been used in the following cases, all of which sustain the sufficiency of such a defense: *Maine* v. *Railroad Co.* (Iowa) 70 N. W. Rep. 630; *Railroad Co.* v. *Bell,* 44 Neb. 44;

*Donald* v. *Railroad Co.* (Iowa) 61 N. W. Rep. 971; *Railroad Co.* v. *Wymore,* 40 Neb. 645; *Vickers* v. *Railroad Co.* 71 Fed. Rep. 139; *Leas* v. *Pennsylvania Co.* 10 Ind. App. 47; *Ringle* v. *Pennsylvania Co.* 164 Pa. St. 529; *Shaver* v. *Pennsylvania Co.* 71 Fed. Rep. 931; *Otis* v. *Pennsylvania Co.* 71 id. 136; *Johnson* v. *Railroad Co.* 163 Pa. St. 127; *Spitze* v. *Railroad Co.* 75 Md. 162; *Fuller* v. *Relief Ass.* 67 id. 433; *Graft* v. *Railroad Co.* (Pa.) 8 Atl. Rep. 206; *Martin* v. *Railroad Co.* 41 Fed. Rep. 125; *State* v. *Railroad Co.* 36 id. 655; *Owens* v. *Railroad Co.* 35 id. 715; *Griffiths* v. *Earl of Dudley,* 9 Q. B. Div. 357; *Clements* v. *Railroad Co.* 2 id. 482; *O'Neill* v. *Iron Co.* 63 Mich. 690.

The only case to which our attention has been called that is said to announce a contrary doctrine is *Miller* v. *Chicago, Burlington and Quincy Railroad Co.* 65 Fed. Rep. 305. This case went off on a demurrer to the answer, and is the same case referred to above as *Chicago, Burlington and Quincy Railroad Co.* v. *Miller,* 76 Fed. Rep. 439. On appeal to the Circuit Court of Appeals that court used the language quoted above, conceding that such propositions were supported by adequate authority, but held the judgment of the lower court on the demurrer correct, and pointed out specifically wherein the answer was insufficient, although the lower court placed its decision on a different ground, holding the contract itself insufficient to bar the suit for damages.

In the case at bar the appellee contributes largely to the fund under its agreement to make up or guarantee deficits, to furnish surgical aid and attendance, to pay all the expenses of administration and management, and to become responsible for the safe keeping of the funds of the relief department. Such contributions by the appellee to the relief department would be sufficient consideration for a discharge of the appellee's liability to appellant for the injury sustained, after he accepted the benefits of the fund so maintained. Nor does the fact that the fund was in part formed by his contributions to it alter the case. The agreement that the acceptance of the benefits

for the injury, from the relief fund, should operate as a release and satisfaction of all claims against the company on account of such injury cannot be construed as a provision exempting the company from liability for its own negligence. As said in *Johnson* v. *Railroad Co. supra:* "The benefits, by the regulations of the relief association, become due to members whenever disabled by accident in the railroad company's service, or by sickness or injury other than in the company service, without reference to the question of negligence at all. As these provisions include benefits in cases of accident pure and simple, of injury by the negligence of fellow-workmen and by the member's own contributory negligence, it is apparent that they cover a wide field, in which there is no liability of the railroad company at all. Such cases are probably a large majority of those occurring to railroad employees, and the association, therefore, is of the highest order of beneficial societies. But even in cases of injury through the company's negligence there is no waiver of any right of action that the person injured may be thereafter entitled to. It is not the signing of the contract, but the acceptance of benefits after the accident, that constitutes the release. The injured party, therefore, is not stipulating for the future, but settling for the past. He is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby. He may as well accept it in installments as in a single sum, and from an appointed fund to which the company has contributed as from the company's treasury as a result of litigation. The substantial feature of the contract which distinguishes it from those held void as against public policy is, that the party retains whatever right of action he may have until after knowledge of all the facts, and an opportunity to make his choice between the sure benefits of the association or the chances of litigation. Having accepted the former he cannot justly ask the latter in addition."

In every case of injury the injured party has the right to compromise the damages for any valuable consideration, no matter how small, and if he chooses to accept a smaller amount than he might have been able to secure at the hands of a jury, such settlement is nevertheless a full accord and satisfaction and a bar to the prosecution of any suit for damages for such injuries. It is well known that railroad companies frequently compromise such suits out of court, and such compromises are always upheld, if honestly and fairly made. Here is an agreement made between the railroad company and the appellant that the acceptance of the benefits should release the railroad company from responding in damages as the result of an action at law. It is not this agreement alone that constitutes the release, but the acceptance of the benefits therein stipulated, well knowing that the acceptance of such benefits will have the effect of a release. That the appellant knew what the effect of the acceptance of the benefits was is not disputed. He was furnished with a hand-book, which plainly stated that an injured member may either accept the benefits of the fund or rely upon the issue of a suit; that he cannot do both. The agreement is not against public policy, as it merely puts the employee to his election, after an injury has been sustained by him, either to take the benefits of the relief fund, to which the appellee has materially contributed, or to sue for damages in a court of law.

Appellant's next contention is, that the appellee has no right to go into the insurance business, and that the whole relief department scheme is both illegal under the insurance laws of this State, and *ultra vires* of a railroad corporation. The Burlington Voluntary Relief Department is not incorporated as such, but is managed, as has been stated, by some of the officials of the appellee, and the appellee contributes funds to it. The application was made to the superintendent of the relief department of the Chicago, Burlington and Quincy Railroad Com-

pany. The relief department is composed of the appellee and six other railroad corporations and certain of the employees of the same. That such relief department is not an insurance company has been held in *Donald* v. *Railroad Co. supra,* and in *Johnson* v. *Railroad Co. supra.* The latter part of section 31 of the Corporation act, as amended in 1883, provides that "associations and societies which are intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where no annual dues or premiums are required, and where the members shall receive no money, as profits or otherwise, except for permanent disability, shall not be deemed insurance companies." While sick benefits, such as are usually paid by secret and fraternal societies, are not mentioned in express terms in the section quoted, we think they may be fairly construed to be within the spirit of the same. In fact, no mention of the payment of sick benefits occurs in any of our insurance statutes until the statute of 1893 on fraternal beneficiary societies. The business done by the relief department was not prohibited by the statutes relating to insurance companies in force at its organization nor at the time of the injury to appellant, but whether the contract (where it had not been performed by the payment and receipt of the money) or whether the organization of the relief department would or not be held to be *ultra vires* the corporation is a question not necessary to the decision of this case. Appellant cannot invoke that defense against appellee after having received the benefits secured to him by his contract. It is a general rule that a corporation cannot avail itself of the defense of *ultra vires* where a contract, not immoral in itself nor forbidden by any statute, has been in good faith fully performed by the other party and the corporation has had the full benefit of its performance. (*McNulta* v. *Corn Belt Bank,* 164 Ill. 427; *Kadish* v. *Garden City Building Ass.* 151 id. 531.) And this rule ap-

plies with equal force to the other party setting up that the contract was *ultra vires* the corporation. (*Kadish* v. *Garden City Building Ass. supra.*) Appellant was paid at the rate of one dollar a day after he was injured until he began this suit, and then, by the terms of the regulations, the payment of benefits ceased. The appellee paid as it agreed to do and the appellant has accepted such payment, and the contract has been fully executed. It is therefore immaterial to inquire whether the contract or the organization of the relief department was *ultra vires* the corporation or not. That question does not properly arise in this case, and we do not, by anything hereinbefore said, intend to express any opinion as to whether or not it would appear, in a direct and proper proceeding on the part of the State, that the appellee corporation has exceeded its charter powers in organizing and maintaining its voluntary relief department.

Certain testimony was offered by appellant which he contends would have tended to prove that he was coerced into joining the relief department. The substance of this testimony was, that he was advised on three different occasions by the superintendent or foreman, who had power to discharge him, to join the association, and that he did so, not because he desired to, but that, being in the presence of his superior who had power to discharge him, he felt that he would stand better with the company by signing. It was not claimed or offered to be proved that he made any objection whatever to joining the association or that anything more than mere advice was used in the premises. Plainly, this offered proof would not have shown coercion. Besides, by the very terms of the contract he was at liberty to withdraw at the end of any month, and was at liberty, after he was injured, to refuse to accept the benefits and sue the company for damages.

Some contention is also made that when appellant received the first payment of benefits, which was two dollars, he was under the influence of opiates, and, by reason

thereof, unable to appreciate the full import and meaning of the reception of such benefits. In the first place, the evidence was insufficient to establish appellant's contention in this regard; and in the second place, he continued to receive monthly installments, varying in amounts from $29 to $31, for eight months thereafter, and it is not claimed that he did not at those times fully understand the consequences of his acts.

Upon the whole record we are satisfied there was no evidence admitted or offered which would have authorized the jury to find a verdict against the company, and that the court properly directed a verdict in its favor.

The judgment of the Appellate Court affirming the judgment below is affirmed.        *Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting: It is not lawful for a railroad company to engage in the insurance business. A corporation can only exercise such powers as are expressly granted to it, or such implied powers as may be necessary to carry out or effectuate its express powers. A railroad company is authorized by its charter to carry freight and passengers. It is a common carrier, and nothing else. The insurance of its employes is not one of its implied powers. If it be true that a railroad company can insure its employes because they need insurance, then it can go into the tailoring or clothing business because its employes need clothes, or operate a farm to raise cattle and hogs and poultry and wheat and corn because its employes need food. Such an extension of the implied powers of a railroad company as is thus indicated would lead eventually to an absorption by the railroad companies of all the employments and all the business of the country. Monopolies, created by the gradual reaching out of the railroads into the various departments of business in no way connected with the original purposes of their organization, are dangerous to the liberties of the people.