BROWN and WALKER, JJ., concur in result.
Action heard on demurrer to the complaint.
The plaintiff complains that while he was an employee of the defendant he was taken sick and was received into the hospital of the Relief Department of the defendant at Rocky Mount, to be there operated upon *Page 307 
and attended to. That the operation was performed, and through the neglect and inattention and carelessness of the surgeon, nurses and attendants, he was permanently injured, and demanded damage (319) for his suffering and injury. The plaintiff alleges further, that he was entitled to admission into the hospital because he was a member of the Relief Department, under a certificate issued to him, as follows:
ATLANTIC COAST LINE RAILROAD COMPANY.
RELIEF DEPARTMENT.
CERTIFICATE OF MEMBERSHIP IN THE RELIEF FUND,
No. 5282.
Office of the Superintendent.
WILMINGTON, N.C. 19 September, 1902.
This Certifies, That N. F. Barden, employed by the Atlantic Coast Line Railroad Company, is a member of the Relief Fund of the Relief Department of the Atlantic Coast Line Railroad Company, and is entitled to the benefits provided by the regulations of the Relief Department for a member of the _________ Class, with _______ additional Death Benefit of the First Class.
 __________________________, Superintendent of the Relief Department.
It was alleged that plaintiff was operated on in May, 1906; that he had paid since his membership, seventy-five cents per month; that this amount was retained out of his wages by the defendant. The rules and regulations of the Relief Department are attached to the complaint. The following is a summary of the principal rules and regulations, which are as follows:
It is a department of the defendant company's service. (Rule 1.) It is in charge of a superintendent and a chief surgeon, whose directions in carrying out these regulations are to be complied with, subject to the control of the defendant company's president. (Rule 1.) The said president appoints the superintendent, assistant superintendent and the chief surgeon. (Rule 11.) It has an advisory committee (Rule 5), of which the defendant company's general manager is ex officio a member, and the chairman, with twelve other members, of whom six are selected by the defendant company's board of directors and six by the contributing employees, insuring the control of this advisory committee to the defendant company by a "safe majority." The functions of this committee, controlled by the defendant company, is to "have general supervision of the operation of the departments, and see that they are *Page 308 
conducted in accordance with the regulations." (Rule 8.) This (320) advisory committee may propose amendments to the regulations, but no amendment becomes operative until adopted by a majority of the whole committee and it is approved by the board of directors of the defendant company. (Rule 16.)
The superintendent, who is appointed by the defendant company's president, shall have charge of the business pertaining to the department, employing subordinates, certifying pay-rolls or bills, signing orders for payment of benefits, etc., and exercising such other authority as may be conferred upon him by the president of the defendant company. (Rule 9.) Its members are limited to employees of the defendant company. (Rule 17.) Its funds are derived from their contributions. (Rule 3.) If there should be a deficit in these contributions, then, only, the company advances the money for its operations, charging 4 per cent interest, and reimbursing itself out of the funds contributed by the employees. (Rule 14.) It pays 4 per cent on the monthly balances which may be in its hands derived from this fund, it is true, but the company is the trustee, and it administers the trust funds. (Rules 4 and 13.)
If a member of this relief department is furloughed, suspended or otherwise temporarily relieved from defendant's service for a specified time, he may retain his membership, during such absence by paying his contributions in advance; but if at the time specified by his division officer he does not return to his duty in the service of the company, his membership in the relief fund shall thereupon terminate. (Rule 29.) When a member resigns from defendant company's service, or leaves it without notice, is relieved or discharged therefrom, his membership in the relief fund terminates with his employment, and he shall not be entitled to any benefits for time thereafter, except he continue his membership only in respect of the minimum death benefit, if applied for within five days. (Rule 30.) If a member absents himself from the duty of the defendant company for six days, without permission previously obtained, or without satisfactory reasons to his employing officer, he is deemed to have left the defendant's service without notice, and his membership in the relief fund terminates. (Rule 31.) If a member reported by a medical examiner as able to work, fails to report for work at the time set, he must obtain a written furlough from his employing officer; otherwise, his relief fund membership ceases. (Rule 32.)
The employee must make written application for membership in the relief fund. (Rule 34.) In this application, set out in Rule 34, he is to state he has read or had read the regulations of the department, (321) accepts them, together with subsequent changes or amendments, and accepts any agreement "now or hereafter made by the said company with any corporation or corporations now or hereafter associated *Page 309 
with it in the administration of their relief departments." He agrees that the company may retain the stipulated contributions from his wages to be applied to the relief fund, and his agreement to do so shall constitute an assignment in advance for such portions of his wages to the said company in trust. He also agrees that if transferred to the service of any other company associated with the said company in the joint operation of their relief departments, it shall operate to transfer his membership in the relief department of such other company. (Rule 34.)
It is further provided that "contributions for any month will be due on the first of that month, and ordinarily be deducted from the member's wages on the pay-roll of the preceding month"; but, when a member has no wages on the pay-roll, any contribution due from him must be paid in cash in advance, otherwise he will be in arrears. (Rule 40.) The benefits from this relief fund "shall not be due on account of disability beginning, or death occurring while a member is in arrears, and when in arrears for two months his membership shall thereupon cease." (Rule 41.)
It is provided by Rule 49 how much shall be paid in the nature of benefits: to a member of the first class, 50 cents per week; second class, $1; third class, $1.50; fourth class, $2; fifth class, $2.50, and at half these rates during the continuance of disability; but these sums are not paid for a longer period than fifty-two weeks. It is also provided by this rule (49) that provisions shall be made by the department, in addition to the benefits allowed, "for necessary surgical attendance, or, when such provision is not made, payment in behalf of the member of such bills for surgical attendance as are authorized and approved by the chief surgeon." There is likewise a provision that, in case of sickness, he shall have the same benefits. (Rule 49.) It is also provided by this rule (49) that "disabled members must take proper care of themselves and have suitable treatment; benefits will be discontinued if members refuse or neglect to comply with the recommendations of the medical officers of the Relief Department as to proper care and treatment."
Certain death benefits are provided by Rule 49. All of these "benefits are to be paid in conformity with the financial methods of the company, and on orders drawn by the superintendent, upon his receiving satisfactory certificates respecting the claims and such releases (322) as may be required by him."
"When a member resigns from the service, or leaves the service without notice, or is relieved or discharged therefrom, his membership in the relief fund shall terminate with his employment, and he shall not be entitled to any benefits for time thereafter."
In the Revised Regulations (Exhibit B, page 30), Rule 47 provides: "Payment for each day, except for the first six days of disability classed as due to sickness, for a period not longer than fifty-two weeks, at the *Page 310 
same rates as for accident benefits; and provision by the department for free medical treatment of the member, in one of the hospitals under its control, in cases of disability, classed as due to sickness which, in the opinion of the medical examiners of the department, may require such treatment, and when approved by the superintendent or chief surgeon."
Extract from Regulation No. 64:
"The acceptance by the member of benefits for injury shall operate as a release and satisfaction of all claims against the company and in all other companies associated therewith as aforesaid, for damages arising from or growing out of such injury; and further, in the event of the death of a member, no part of the death benefit shall be due or payable, unless and until good and sufficient releases shall be delivered to the superintendent, of all claims against the Relief Department as well as against the company, and all other companies associated therewith as aforesaid, said releases having been duly executed by all who might legally assert such claim; and further, if any suit shall be brought against the company, or any other company associated therewith as aforesaid, for damages arising from or growing out of injury or death occurring to a member, the benefits otherwise payable and all obligations of the Relief Department and of the company created by the membership of such member in the relief fund, shall thereupon be forfeited, without any declaration or other act by the Relief Department or the company; but the superintendent may, in his discretion, waive such forfeiture upon condition that all pending suits shall first be dismissed.
"If a claim for damages on account of injuries shall be settled by the company without suit, such settlement shall release the Relief Department and the company from all claims for benefits on account of such injuries."
(323) Extract from Regulation No. 65:
"All claims of members, or of their beneficiaries or other representatives, for benefits, and all questions or controversies of whatsoever character, arising in any manner of between any parties or persons, in connection with the Relief Department or the operation thereof, whether as to the construction of language, or the meaning of regulations, or as to any writing, decision, instructions or acts in connection with the operation of the department, shall be submitted to the determination of the superintendent, whose decision shall be final and conclusive thereof, unless a written appeal from his decision is made to the committee.
"If the party or parties so submitting any matter to the superintendent shall be dissatisfied with his decision, such party or parties shall appeal to the committee within thirty days after notice to the parties interested of the decision of the superintendent. *Page 311 
"When an appeal is taken to the committee, it shall be heard by said committee without further notice, at their next stated meeting, or at such future meeting or time as they may designate, and shall be determined by vote of the majority of a quorum, or of any other number not less than a quorum of the members present at such meeting, and the decision arrived at thereon by the committee shall be final and conclusive upon all parties, without exception or appeal."
Extract from application agreement required:
"I also agree that in consideration of the amounts paid and to be paid by said company for the maintenance of said Relief Department, and of the guarantee by said company of the payments of said benefits, the acceptance by me of benefits for injury shall operate as a release and satisfaction of all claims against said company, and all other companies associated therewith in the administration of their Relief Department, for damages arising from or growing out of said injury; and further, in the event of my death, no part of said death benefit or unpaid disability benefit shall be due or payable unless and until good and sufficient releases shall be delivered to the superintendent of said Relief Department, of all claims against said Relief Department as well as against said company and all other companies associated therewith as aforesaid, arising from or growing out of my death, said releases having been duly executed by all who might legally assert such claims; and further, if any suit shall be brought against said company, or any other company associated therewith as aforesaid, for damages arising from or out of injury or death occurring to me, the benefits otherwise payable, and all obligations of said Relief Department and of said company, created by my membership in said relief fund, shall thereupon be forfeited without declaration or other act by said Relief Department or said (324) Company."
Extract from Revised Regulations (Exhibit "B," p. 19):
"I also agree, for myself and those claiming through me, to be especially bound by the regulation providing for final and conclusive settlement of all claims for benefits or controversies of whatsoever nature, by reference to the superintendent of the Relief Department, and an appeal from his decision to the advisory committee."
The defendant demurred to the complaint upon the following grounds:
"1. It does not allege that the defendant did not use reasonable care and diligence in the selection and employment of the surgeons, nurses and attendants in the hospital, at the time alleged in the complaint, when plaintiff was in said hospital for surgical care and attention.
"2. That it does not allege that the defendant knew that the said surgeons, nurses and attendants, or any of them, were incompetent or *Page 312 
careless, or that it retained them, or any of them, after knowing that they were incompetent, or having grounds to believe they were incompetent.
"3. That it does not allege any negligence on the part of the defendant in the selection or employment of any of the said surgeons, nurses or attendants, or in retaining them after it knew they were incompetent, or had good reasons to believe they were incompetent."
His Honor overruled the demurrer, with leave to the defendant to answer over. The defendant appealed.
The defendant company owns and controls and operates several thousand miles of railroad in this and other States. It has established in this State, at least, a Relief Department, in which only its employees are admitted as members, and in which they can remain as members only so long as they continue to be employees. As members, they are required to contribute each month a fixed amount, regulated by the monthly pay; the lowest paying 75 cents per month, and the highest $8.25 per month, according to the benefits to be received, which range from $250 to $5,000. The membership is based upon an application signed by the employee, and the applicant agrees to be bound by the rules and regulations of (325) the Relief Department; that the company shall apply the stipulated amount each month from his wages, "for the purpose of securing the benefits provided in the regulations for a member of the relief fund"; further, the applicant agrees, "that, in consideration of the amount paid and to be paid by said company for the maintenance of said Relief Department, and of the guarantee by said company of the payment of said benefit, the acceptance by me of said benefits shall operate as a release and satisfaction of all claims against said company, and all other companies associated therewith in the administration of their Relief Department, for damages arising from or growing out of said injury; and further, in the event of my death, no part of said death benefit or unpaid disability benefit shall be due or payable unless and until good and sufficient release shall be delivered to the superintendent of said Relief Department of all claims against said Relief Department, as well as against said company and all other companies associated therewith, as aforesaid."
In our opinion, it becomes necessary to determine the validity and effect of the agreement, in order to fix the character of the Relief Department of the defendant, whether it is an agency or an association with *Page 313 
only benevolent aims and purposes, or a mere agency created by the defendant to serve, under the cloak of charity, the purpose of avoiding liability for negligent injuries received by its employees.
The concluding sentence of section 2646, Rev., known as the Fellow-servant Act, is in these words: "Any contract or agreement, express or implied, made by any employee of such company to waive the benefits of this section, shall be null and void." The authorities agree, without dissent, that all contracts made by railroad companies to avoid liability for their own negligence are void. There is, also, a unanimity of decision that if the agreement made by the employee, upon entering the Relief Department, is a contract by which the railroad company undertakes to stipulate against liability for its own negligence, then all such stipulations are void. Some courts, however, as Pennsylvania, Maryland, Iowa, South Carolina, Indiana, Georgia, construe the agreement as giving the injured employee an election or choice of remedies: either to accept the benefits or to bring his action for damages. These courts also hold that it is not the stipulation made in advance that is effective, but the acceptance of benefits after the injury that constitutes the release of the company and bars the action for damages. We have read with care and attention the opinions of the learned courts that have considered this question, and have given to them that attentive consideration which their learning and high standing demand that they shall (326) receive from us. Their conclusions are but persuasive upon us; the question has not been passed upon by this Court and is an open question. After giving the matter that careful consideration that its importance requires, we have reached the conclusion which we now express.
The Relief Department of this defendant has been declared by this Court, in Nelson's case, 147 N.C. 103, to be a mere agency of the defendant; it is not incorporated and has no separate entity, but it is, in fact, "a bureau or department" of the defendant company, not having the capacity to sue or be sued. The employees of the defendant company contribute of their monthly wages to this department; the defendant handles the money and is responsible for its safe-keeping; it agrees to pay 4 per cent on monthly balances and guarantees the payment of the benefits accruing by the regulations to its members. It, likewise, contributes to this department, it is potent in its management and control, and in the selection of the surgeons and physicians. If an employee of the company is injured by negligence, why should he be required to stipulate in advance that he must choose between a forfeiture, on the one hand, of all benefits which accrue to him under the rules and regulations of the department to which he has contributed each month, and, on the other hand, his right of action, of which he cannot be deprived by any agreement, express or implied? For whose benefit is this choice of *Page 314 
remedies to be made? Certainly, not for that injured employee who has, during each month of his membership, been contributing of his earnings in order that the benefits of the department may be his in time of need. Why should he be forced to elect for the sole benefit of that contributor to this department who receives and manages its funds, even though its contributions to it largely exceed those of any other contributor? Is it not the obvious purpose of the company to place its employees, who may be negligently injured, in the position to forego the benefits of an association which they have helped to create, or to take the chance of a suit with it for damages in the courts, with its attendant annoyances, delays and uncertainties? What doth it advantage the employee? Is not all the benefit to the company? This choice of remedies is to be made only by those employees whose injuries or death are caused by the negligence of the defendant. Upon no other contingency is the employee forced to choose; in no other contingency is he confronted with an election of remedies, nor is he under the compulsion of choice. Further, those who are injured or killed by negligence can receive no benefit stipulated (327) in the rules and regulations, "unless and until" a complete release of the action for damages is properly executed. Such is the compulsion of the stipulation; such is the "letter of the bond." The election of remedies originates in and is predicated upon this stipulation.
In our opinion, this stipulation is an ingenious scheme devised by the company to avoid responsibility for its negligence, and, as such, is inequitable and void. Such would seem to be the view of the Federal Congress, by its adoption, in 1906, of the following enactment, 34 Stat. L., 234, approved 11 June, 1906: "No contract of employment, insurance, relief benefit, or indemnity for injury or death, entered into by or on behalf of any employee, nor the acceptance of any such insurance, relief benefit, or indemnity, by the person entitled thereto, shall constitute any bar or defense to any action brought to recover damages for personal injuries to or death of such employee: Provided, however, that upon the trial of such action against any common carrier the defendant may set off therein any such insurance, relief benefit, or indemnity that may have been paid to the injured employee, or, in case of his death, to his personal representative." And by the adoption, 22 April, 1908, ch. 149, sec. 535, Stat. L., 65, of the following enactment: That any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void: Provided, that in any action brought against any such common carrier, under or by virtue of any of the provisions of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief *Page 315 
benefit, or indemnity, that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."
Eliminating, therefore, this regulation and stipulation, as void, we have then a Relief Department or association, supported by the mutual contributions of employee and employer, maintained for the sole purpose of relieving and mitigating the suffering of its members — a charity whose noble purposes are untainted by selfish interest, or, to quote the definition of Gray, J., in Johnson v. Phillips, 14 Allen, 539, we have a charity which, "in the legal sense, may be more fully defined as a gift, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial (328) whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." Fire Patrolv. Boyd, 120 Pa. St., 624; 1 L.R.A., 4171.
With the character of the relief association thus defined, what is the extent of the duty of the defendant in selecting the physicians and surgeons and attendants who perform the offices cast upon them in their respective positions? The law is well settled that the only duty imposed upon the defendant is the duty to exercise reasonable care in the selection of the physicians and surgeons who are reasonably competent, and having exercised this duty, the company is not chargeable with the want of skill of the physician or surgeon whom it has selected, in the performance of the service he is required to render. 3 Elliott on Railroads (2 Ed.), sec. 1388; R. R. v. Zeiler, 54 Kan. 340; R. R. v. Artist, 60 Fed., 365; Powersv. Hospital, 109 Fed., 294; Maine v. R. R., 109 Iowa 260; York v. R. R.,98 Iowa 544; Quinn v. R. R., 94 Tenn. 713; R. R. v. Price, 32 Fla. 46;McDonald v. Hospital, 120 Mass. 432; Loubheim v. S. S. Co., 107 N.Y. 228;Allen v. S. S. Co., 132 N.Y. 91; O'Brien v. S. S. Co., 154 Mass. 272;R. R. v. Sullivan, 141 Ind. 83; Haggarty v. R. R., 100 Mo. App. 424;Perry v. House of Refuge, 63 Mo., 20; Hearns v. Waterbury Hospital,66 Conn. 98; Downes v. Harper Hospital, 101 Mich. 555; Fire Patrol v. Boyd, 120 Pa. St., 624; 1 L.R.A., 417; Parks v. Northwestern Univ., 2 L.R.A. (N.S.), 556; 218 Ill. 381; R. R. v. Howard, 45 Neb. 570.
We find no allegation of such negligence of the defendant in the complaint; the negligence complained of, and the sole theory of the complaint, is the malpractice of the surgeon and his attendants, but it is *Page 316 
nowhere alleged that these were carelessly or negligently selected by the defendant; or, if they were incompetent, that such incompetency was known to the defendant. We think the allegation of such negligence material and that the complaint, in failing to contain it, is demurrable. We conclude there was error in overruling the demurrer, and the judgment is reversed and the action will be dismissed, unless the plaintiff shall obtain leave to amend the complaint, from the judge before whom the motion shall be made.
Reversed.